# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**RINALDYS CASTILLO**, individually and on behalf of all others similarly situated,

                 Plaintiff,

     v.

**ALBERT EINSTEIN COLLEGE OF MEDICINE INC., MONTEFIORE HEALTH SYSTEMS, INC., MONTEFIORE MEDICAL CENTER**, and **MONTEFIORE MEDICINE ACADEMIC HEALTH SYSTEM, INC.**,

                 Defendants.

Case No.: 1:24-cv-00984(PAE)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE

**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
Jeremiah Frei-Pearson
Andrew C. White
Erin Raye Kelley
One North Broadway, Suite 900
White Plains, New York 10601
Telephone: (914) 298-3281
jfrei-pearson@fbfglaw.com
awhite@fbfglaw.com
ekelley@fbfglaw.com

**SEPPINNI LAW**
Shane Seppinni
Zachary L. Rubin
40 Broad St., 7th Fl.
New York, NY 10004
Telephone: (212) 859-5085
shane@seppinnilaw.com
zach@seppinnilaw.com

*Attorneys for Plaintiff and the Proposed Class & Collective*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND....................................................................................................2

    I.    Defendants Employed Plaintiff And Hundreds Of Coordinators..................................2

    II.    Defendants Failed To Pay Overtime, Or Provide Accurate Wage Statements.............3

ARGUMENT.......................................................................................................................3

    I.    Defendants' Motion To Dismiss Should Be Denied. .................................................3

        A.    Standard.............................................................................................................3

        B.    Defendants Were Plaintiff's "Employer."............................................................4

            i.    Plaintiff Sufficient Plead That Defendants Were A Joint-Employer...5

                a.    Plaintiff Sufficiently Plead That
Defendants Exerted Formal Control Over Plaintiff. ..............6

                b.    Plaintiff Sufficiently Plead That
Defendants Exerted Functional Control Over Plaintiff. .........8

            ii.    Plaintiff Sufficiently Plead That
Defendants Are A Single Integrated Enterprise....................................9

                a.    Plaintiff Sufficiently Plead That Defendants
Had A Centralized Control Of Labor Relations. ...................11

                b.    Plaintiff Sufficiently Plead Facts
Supporting The Remaining Single Enterprise Factors..........13

    II.    Defendants' Motions To Strike Are Without Merit. ...............................................15

        A.    Pleadings Describing Defendants' Failure
To Provide Meal And Rest Breaks Should Not Be
Struck Because The Facts Are Relevant To Calculating
The Unpaid Overtime Plaintiff And Coordinators Worked. ..........................15

        B.    Courts Highly Disfavor Motions To Strike Class Claims
At The Pleading Stage And Defendants' Fall Far Short Of
Proving That The Court Should Prematurely Address Class Claims.............17

CONCLUSION...................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Aguilar v. Calexico Cinco LLC,*
   No. 22-6345, 2024 U.S. Dist. LEXIS 115935 (E.D.N.Y. Jun. 28, 2024) ........................................ 14

*Almonte v. JAM Maint. LLC,*
   No. 22-1820, 2023 U.S. Dist. LEXIS 165124 (S.D.N.Y. Sep. 18, 2023) ........................................ 9

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ........................................................................................................ 18

*Anderson News, L.L.C. v. Am. Media, Inc.,*
   680 F.3d 162 (2d Cir. 2012) .............................................................................................. 3

*Andrews v. Home Depot U.S.A., Inc.,*
   No. 03-5200, 2005 U.S. Dist. LEXIS 44304, 2005 WL 1490474 (D.N.J. June 23, 2005) ............ 17

*Ansoumana v. Gristede's Operating Corp.,*
   255 F. Supp. 2d 184 (S.D.N.Y. 2003) ................................................................................. 5

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................................ 3

*Awan v. Durrani,*
   No. 14-4562, 2015 U.S. Dist. LEXIS 86171 (E.D.N.Y. Jul. 2015) .......................................... 16

*Bautista v. PR Gramercy Square Condo.,*
   642 F. Supp. 3d 411 (S.D.N.Y. 2022) ................................................................................. 4

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................................ 3

*Boire v. Greyhound Corp.,*
   376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964) .............................................................. 4

*Brown v. Daikin Am., Inc.,*
   756 F.3d 219 (2d Cir. 2014) ..................................................................................... *passim*

*Carter v. Dutchess Cmty. Coll.,*
   735 F.2d 8 (2d Cir. 1984) ................................................................................................. 6

*Chen-Oster v. Goldman, Sachs & Co.,*
   877 F. Supp. 2d 113 (S.D.N.Y. 2012) ............................................................................ 20, 21

*Cook v. Arrowsmith Shelburne, Inc.,*
   69 F.3d 1235 (2d Cir. 1995) ........................................................................................ 10, 11

*Cucul v. Major Cleaning, Inc.,*

No. 22-601, 2024 U.S. Dist. LEXIS 96423 (E.D.N.Y. May 30, 2024) ............................................... 6

*Cuji v. Sistina Rest.*,
No. 20-5594, 2021 U.S. Dist. LEXIS 144424 (S.D.N.Y. Aug. 2, 2021) ........................................... 13

*Dacas v. Duhaney*,
No. 17-3568, 2023 U.S. Dist. LEXIS 160674 (E.D.N.Y. Sep. 8, 2023) ........................................... 11

*Fernandez v. HR Parking Inc.*,
407 F. Supp. 3d 445 (S.D.N.Y. 2019) ......................................................................... 4, 5, 6, 8-9

*Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
284 F.R.D. 238 (E.D. Pa. 2012) ...................................................................................... 18, 21

*Granda v. Trujillo*,
No. 18-3949, 2019 U.S. Dist. LEXIS 14884 (S.D.N.Y. Jan. 30, 2019) ............................................ 8

*Greenawalt v. AT&T Mobility LLC*,
642 F. App'x 36 (2d Cir. 2016) ......................................................................................... 5, 8

*Griffin v. Sirva Inc.*,
835 F.3d 283 (2d Cir. 2016) ........................................................................................... 5, 9-10

*Gucciardo v. Titanium Constr. Servs.*,
No. 16-1113, 2017 U.S. Dist. LEXIS 109727 (S.D.N.Y. Jul. 14, 2017) .......................................... 19

*Hart v. Rick's Cabaret Int'l, Inc.*,
967 F. Supp. 2d 901 (S.D.N.Y. Sep. 10, 2013) ..................................................................... 8

*Herman v. RSR Sec. Servs. Ltd.*,
172 F.3d 132 (2d Cir. 1999) ............................................................................................ 4, 5, 6

*Hernandez v. Quality Blacktop Servs.*,
No. 18-4862, 2021 U.S. Dist. LEXIS 46104 (E.D.N.Y. Mar. 10, 2021) ......................................... 10

*Hunley v. BuzzFeed, Inc.*,
No. 20-08844, 2021 U.S. Dist. LEXIS 189420 (S.D.N.Y. Sep. 30, 2021) ....................................... 16

*In re Bookends & Beginnings LLC*,
No. 21-02584, 2022 U.S. Dist. LEXIS 161695 (S.D.N.Y. Sep. 7, 2022) ......................................... 21

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
903 F. Supp. 2d 198 (S.D.N.Y. 2012) .............................................................................. 18

*In re MacGregor Elec., S.E.*,
No. 08-0122, 2009 Bankr. LEXIS 2695 (Bankr. D.P.R. Aug 14, 2009) .......................................... 17

*Ironforge.com v. Paychex, Inc.*,
747 F. Supp. 2d 384 (W.D.N.Y. 2010) .............................................................................. 17

*Javier H. v. Garcia-Botello*,
239 F.R.D. 342 (W.D.N.Y. Sep. 29, 2006) ......................................................................... 15

iv

*Kassman v. KPMG LLP*,
    925 F. Supp. 2d 453 (S.D.N.Y. 2013) .................................................................. 20

*Korman v. The Walking Co.*,
    503 F. Supp. 2d 755 (E.D. Pa. 2007) .................................................................. 18

*Kronenberg v. Allstate Ins. Co.*,
    No. 18-6899, 2020 U.S. Dist. LEXIS 44103 (E.D.N.Y. Mar. 12, 2020) ......................................... 21

*Maddison v. Comfort Sys. USA (Syracuse), Inc.*,
    No. 17-0359, 2018 U.S. Dist. LEXIS 16090, 2018 WL 679477 (N.D.N.Y. Feb. 1, 2018) .......... 18

*Mayfield v. Asta Funding, Inc.*,
    95 F. Supp. 3d 685 (S.D.N.Y. 2015) .................................................................. 21

*McHenry v. Fox News Network, LLC*,
    510 F. Supp. 3d 51 (S.D.N.Y. 2020) .................................................................. 15

*Murray v. Miner*,
    74 F.3d 402 (2d Cir. 1996) .................................................................. 10, 11

*Musiello v. CBS Corp.*,
    518 F. Supp. 3d 782 (S.D.N.Y. 2011) .................................................................. 12, 14

*Nat'l Lab. Rels. Bd. v. Newark Elec. Corp.*,
    14 F.4th 152 (2d Cir. 2021) .................................................................. 14

*Nerland v. Caribou Coffee Co.*,
    564 F. Supp. 2d 1010 (D. Minn. 2007) .................................................................. 20

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) .................................................................. 19

*Olvera v. Bareburger Grp. LLC*,
    73 F. Supp. 3d 201 (S.D.N.Y. 2014) .................................................................. 7, 11

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) .................................................................. 18

*Parker v. Columbia Pictures Indus.*,
    204 F.3d 326 (2d Cir. 2000) .................................................................. 11

*Popat v. Levy*,
    253 F. Supp. 3d 527 (W.D.N.Y. May 19, 2017) .................................................................. 12

*Ramos v. Apple Inc.*,
    No. 22-02761, 2023 U.S. Dist. LEXIS 158183 (S.D.N.Y. Sep. 6, 2023) ......................................... 21

*Reiter's Beer Dist., Inc. v. Schmidt Brewing Co.*,
    657 F. Supp. 136 (E.D.N.Y. 1987) .................................................................. 15

*Roach v. T.L. Cannon Corp.*,

No. 10-0591, 2015 U.S. Dist. LEXIS 177286, 2015 WL 10818750 (N.D.N.Y. 2015) .................. 18

*Romero v. DHL Express, Inc.*,
   No. 12-1942, 2015 U.S. Dist. LEXIS 36974 (S.D.N.Y. Mar. 24, 2015) ........................................... 16

*Russell v. Forster & Garbus, LLP*,
   No. 17-4274, 2020 U.S. Dist. LEXIS 45299 (E.D.N.Y. Mar. 16, 2020) ........................................... 18

*Shiflett v. Scores Holding Co.*,
   601 F. App'x 28 (2d Cir. 2015) .......................................................................................................... 11

*Solis v. ZEP LLC*,
   No. 19-4230, 2020 U.S. Dist. LEXIS 50797, 2020 WL 1439744 (S.D.N.Y. Mar. 24, 2020) ........ 12

*Sosa v. Bentis Fresh Bread Inc.*,
   No. 20-04705, 2021 U.S. Dist. LEXIS 178850 (S.D.N.Y. Sep. 20, 2021) ........................................ 8

*Spencer v. No Parking Today, Inc.*,
   No. 12-6323, 2013 U.S. Dist. LEXIS 36357 (S.D.N.Y. Mar. 15, 2013) ........................................... 19

*Steele-Warrick v. Microgenics Corp.*,
   677 F. Supp. 3d 107 (E.D.N.Y. Jun. 12, 2023) ................................................................................. 17

*Vinole v. Countrywide Home Loan, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ............................................................................................................. 18

*Wexelberg v. Project Brokers LLC*,
   No. 13-7904, 2014 U.S. Dist. LEXIS 84400 (S.D.N.Y. Apr. 28, 2014) ........................................... 14

*Yap v. Mooncake Foods, Inc.*,
   146 F. Supp. 3d 552 (S.D.N.Y. 2015) ............................................................................................... 15

*Zheng v. Liberty Apparel Co.*,
   355 F.3d 61 (2d Cir. 2003) .......................................................................................................... 6, 8, 9

## Statutes

Fed. R. Civ. P. 12 ....................................................................................................................... 3, 16, 17

Fed. R. Civ. P. 23 ............................................................................................................................ 19, 21

N.Y. Lab. Law § 218 .............................................................................................................................. 16

N.Y. Lab. Law § 162 ........................................................................................................................ 15, 16

Plaintiff Rinaldys Castillo respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss the First Amended Complaint Or, In the Alternative, Motion to Strike filed by Defendants Montefiore Medicine Academic Health Systems, Inc. ("MMAH"), Montefiore Health Systems, Inc. ("MHS"), Montefiore Medical Center ("MMC") (collectively "Montefiore Defendants"), and Albert Einstein College of Medicine Inc. (the "College") (collectively "Defendants").

## INTRODUCTION

For years, Defendants have systematically and willfully violated New York law by deliberately engaging in wage theft against salaried Coordinators ("Coordinators") in violation of the New York Labor Law ("NYLL") and the Federal Labor Standard Act ("FLSA"). For Plaintiff and other Coordinators, these statutory violations have included failure to pay overtime wages, to provide accurate wage statements, and to pay wages earned in accordance with their agreed terms of employment. Plaintiff brings this lawsuit to recover damages on behalf of himself and others who have been similarly harmed by Defendants.

Defendants' motion makes three infirm arguments. First, Defendants argue that the claims against the Montefiore Defendants should be dismissed because the Montefiore Defendants were not Plaintiff's employer. This argument fails because Plaintiff successfully plead that each of the Defendants were his statutory "employer." *See infra* at 3-15.

Second, Defendants argue that Plaintiff's allegations relating to Defendants' unlawful denial of meal breaks should be struck because Plaintiff does not bring claims specifically for that conduct. But these allegations should not be struck because Plaintiff and other Coordinators worked through lunch breaks without pay. The unpaid statutory lunch breaks are highly relevant towards the calculation of unpaid overtime wages and it is well-established that motions to strike are disfavored. *See infra* at 15-16.

Finally, Defendants argue that the class claims should be struck except for the exact dates of Plaintiffs' employment. This argument is contrary to the overwhelming weight of authority, which holds that class periods can extend beyond the date of an individual employee's employment. *See infra* at 17-19.

Accordingly, as set forth fully below, Defendants' motion should be denied in its entirety.

## FACTUAL BACKGROUND

### I.    Defendants Employed Plaintiff And Hundreds Of Coordinators.

From August 31, 2020, to May 31, 2022, Plaintiff worked as one of the hundreds of Coordinators performing integral services for Defendants, who were joint employers and/or single integrated employers. FAC ¶¶ 9, 14-20, 25. While employed by Defendants, Plaintiff was supervised by Dr. Sophie Molholm, who is represented as working for both the College and the Montefiore Defendants. FAC ¶ 19. Indeed, when Plaintiff received his offer letter of employment, it was presented on letterhead containing both Defendants' logos. FAC ¶ 17:





Defendants have been joint employers and/or single integrated employers since at least 2015 when the Montefiore Defendants took on operational authority for the College. FAC ¶ 16. The Montefiore Defendants are similarly intertwined. Montefiore Medicine Academic Health Systems, Inc. has a significant ownership stake in the other Montefiore entities and exercises overall control over their business operations. FAC ¶¶ 10-13. Montefiore Health Systems is the parent company of Montefiore Medical Center, which is the teaching hospital affiliated with the College. *Id.*

This relationship between the Montefiore Defendants and the College continues to this day, as the College and Montefiore have increasingly integrated their operations, presenting themselves as a unified entity to the public and potential employees, including sharing a common logo and employment documents. FAC ¶ 17. Montefiore continues to promote its partnership with the College on its website. FAC ¶¶ 16-17. Through this partnership, Defendants share authority over recruitment, hiring, work assignments, disciplinary decisions, supervision, employment records, shared operations, centralized control of labor relations, and common ownership or financial control. FAC ¶¶ 15-20.

## II.     Defendants Failed To Pay Overtime, Or Provide Accurate Wage Statements.

Plaintiff and other Coordinators frequently worked over 40 hours a week. FAC ¶¶ 3, 26. However, Defendants failed to ever pay them overtime. FAC ¶¶ 29, 74, 81, 91.

Defendants also failed to provide Plaintiff and Coordinators with accurate wage statements, denied rest and meal breaks, and did not pay Plaintiff and other Coordinators wages earned in accordance with their agreed terms of employment. FAC ¶¶ 34-49, 93-106.

## ARGUMENT

## I.     <u>Defendants' Motion To Dismiss Should Be Denied.</u>

### A.     <u>Standard.</u>

On a Rule 12(b)(6) motion, a complaint need only "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). But a claim need not be more likely to succeed than fail; rather, "plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012).

## B. **Defendants Were Plaintiff's "Employer."**

Tacitly conceding that Plaintiffs' claims against the College are proper, Defendants only move to dismiss in full the claims against the Montefiore Defendants. *See generally* Def. Mem. At 5-15. Specifically, Defendants argue that the Montefiore Defendants are not liable for any alleged employment claims, as they are not "employers" under either the FLSA or NYLL.[1] *Id.* This argument fails for all of the Montefiore Defendants.

As an initial matter, it is well-established that questions of statutory employment liability are fact-laden and generally not amenable to resolution at the pleading stage. *See*, e.g., *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 422 (S.D.N.Y. 2022) ("determining joint employment status is 'essentially a factual issue,' that, like determining single employer status, 'is not suitable to resolution on a motion to dismiss.'"), quoting *Boire v. Greyhound Corp.*, 376 U.S. 473, 481, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), and citing *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) ("Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss."). Second Circuit precedent has emphasized the need to evaluate "the totality of the circumstances" of an employer's alleged control and integration, which cannot be done at the pleading stage in this case. *See, e.g., Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) ("In light of the totality of all the circumstances and proof before the district court, its factual findings and legal conclusion that Portnoy qualifies as an employer under the economic realities test must be affirmed.").

---

[1] The tests to determine whether the defendants are employers under the FLSA are the same as the tests under the NYLL. *See Fernandez v. HR Parking Inc.*, 407 F. Supp. 3d 445, 451 (S.D.N.Y. 2019) ("Accordingly, this Court's conclusions with respect to the defendants' status as employers under the FLSA apply equally to the defendants' status as employers under the NYLL.").

Here, Plaintiff sufficiently plead that, pursuant to the FLSA and NYLL, the Montefiore Defendants were Plaintiff's joint employers with the College, and that the Montefiore Defendants and the College were a single integrated employer. *See Fernandez v. HR Parking Inc.*, 407 F. Supp. 3d 445, 450-51 (S.D.N.Y. 2019) ("When two or more entities operate as joint employers of a given worker, each employer is jointly and severally liable for the FLSA violations of all other joint employers.") (citing *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 196 (S.D.N.Y. 2003)); *Griffin v. Sirva Inc.*, 835 F.3d 283, 292 (2d Cir. 2016) ("The single employer doctrine provides that, in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger single-employer entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer."). Thus, the Court should not dismiss any of Plaintiff's claims against any of the Montefiore Defendants.[2]

> **i.    Plaintiff Sufficient Plead**
> **That Defendants Were A Joint-Employer.**

The Second Circuit has three tests for whether an entity is a joint employer under the FLSA and/or the NYLL. *See Fernandez*, 407 F. Supp. 3d 445, 451 (citing *Greenawalt v. AT&T Mobility LLC*, 642 F. App'x 36, 37 (2d Cir. 2016)). Only two of those tests are relevant here—whether Defendants each exercise formal control over Coordinators and/or whether they each exercise functional control over Coordinators. *See Fernandez*, 407 F. Supp. 3d 445, 451. These tests consider nonexclusive and overlapping set of factors that determine whether entities like Defendants "possess[] the power to [either formally or functionally] control the [employee] in question." *Herman*, 172 F.3d 132, 139. Plaintiff must sufficiently plead the factors for one of those tests in order for Defendants to be

---

[2] The same is true even if the Court finds that Plaintiff only successfully pled one of those theories.

considered joint employers.[3]  *See Fernandez*, 407 F. Supp. 3d 445, 451.  As explained below, Plaintiff successfully plead the factors of both tests and showed that the Montefiore Defendants each exercised both formal and functional control over the Coordinators.  Thus, each Defendant is a joint employer who is jointly and severally liable for each violation of the NYLL and FLSA.

### a.    Plaintiff Sufficiently Plead That Defendants Exerted Formal Control Over Plaintiff.

Plaintiff sufficiently plead the factors necessary to satisfy the formal control economic realities test, which include that Defendants: (1) had the power to hire and fire the employee; (2) supervised and controlled the employee's work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained the employee's employment records.  *See Fernandez*, 407 F. Supp. 3d 445, 451 (citing *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  *See also id.* ("When an entity exercises those four prerogatives, that entity, in addition to any primary employer, must be considered a joint employer." (quoting *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 67 (2d Cir. 2003)); *Herman*, 172 F.3d 132, 139 ("No one of the four factors standing alone is dispositive.").

Specifically, Defendants "share authority regarding recruitment and hiring (as reflected by onboarding paperwork provided to Plaintiff), control over the work assignments given to Plaintiff, control over disciplinary decisions (including decisions that could lead to termination), Defendants engage in common supervision and oversight of employees, and Defendants maintain a host of common employment records such as data and information related to Plaintiffs work."  FAC ¶ 18.

---

[3] Plaintiff need only allege that Defendants each individually exercised formal or functional control to establish that they were each a joint employer.  *See Cucul v. Major Cleaning, Inc.*, No. 22-601, 2024 U.S. Dist. LEXIS 96423, at *23 (E.D.N.Y. May 30, 2024) ("[E]ven absent formal control a plaintiff can sustain a claim of joint employment.") (quoting citation omitted & quote cleaned up).

Defendants contend that these allegations constitute "nothing more than legal conclusions". *See* Def. Mem. at 7. Not so. Plaintiff made sufficient factual allegations regarding co-employment to satisfy the formal control economic realities test. *See* FAC ¶¶ 9-20. First, Plaintiff made specific factual allegations regarding the corporate relationship between Defendants: Defendant MMAH is the corporate parent and umbrella organization for the College and MHS; MHS is the parent corporation of MMC; MMAH owns a substantial interest in each of the Defendant entities and maintains ultimate control of all Defendants' operations; MHS assumed operational authority and responsibility for the College in 2015; the College and the Montefiore Defendants jointly market their partnership, and conduct business under the marketing name "Montefiore Einstein"; Defendants often share a common logo, including on employment documents provided to Plaintiff and other putative class members. *See* FAC ¶¶ 10-17. At the pleading stage, these allegations more than establish the plausibility of Plaintiff's claims that Defendants are either statutory joint or single employers and the ultimate resolution of that issue should be addressed based on a full record on summary judgment or (likely) at trial. *See, e.g., Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 208 (S.D.N.Y. 2014) "Although plaintiffs may ultimately fail to prove that the franchisor defendants were joint employers under the FLSA and NYLL, they have pled enough facts to survive a motion to dismiss, and are thus entitled to test their claims in discovery.")

Further, Plaintiff was supervised by Dr. Sophie Molholm, whom he understood to work for the College and Montefiore, throughout his entire employment. Dr. Molholm also publicly represents herself as working for the College and Montefiore. *See* FAC ¶ 19. Defendants challenge this allegation as "naked allegation" that "falls short of the formal control standard" because this allegation "does not make reasonable the inference that Dr. Sophie Molholm controlled Plaintiff's employment, including the decision to retain or terminate him." *See* Def. Mem. at 8. However, along with the other allegations, this allegation established a reasonable inference that the College and Montefiore

Defendants share general supervisory power and control over the employees' work.  Indeed, "formal control does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees."  *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 939 (S.D.N.Y. Sep. 10, 2013) (citations and internal quotation omitted).

These factual allegations are sufficient to satisfy the formal control economic realities test under the joint employer theory.  At this stage, Plaintiff need not provide additional evidentiary proof to support such allegations.  *See Sosa v. Bentis Fresh Bread Inc.,* 2021 U.S. Dist. LEXIS 178850, at *13 (S.D.N.Y. Sep. 20, 2021) ("On a motion to dismiss addressed solely to the pleadings, the Court only may dismiss a complaint based on an affirmative defense . . . when 'the defense appears on the face of the complaint.'") (citations omitted).  Defendants, on the other hand, failed to raise any defenses that their entities are in fact separated and independent under the joint employer theory (nor could it make such a fact-specific argument at the pleading stage).

> **b.    Plaintiff Sufficiently Plead That**
> **Defendants Exerted Functional Control Over Plaintiff.**

Once joint employer status is adequately established, the functional economic reality test set out in *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir. 2003), which focuses on distinguishing between subcontractors and employees, is not applicable to FLSA and NYLL cases that do not involve subcontracting.  *See e.g., Granda v. Trujillo*, 2019 U.S. Dist. LEXIS 14884, at *18 (S.D.N.Y. Jan. 30, 2019); *Grenawalt v. AT&T Mobility LLC*, 642 Fed. Appx. 36, 37 (2nd Cir. 2016).

Nevertheless, Plaintiff sufficiently plead the factors necessary to satisfy the *Zheng* functional economic realities test.  Here, the relevant factors are (3) whether the same employees could continue to do the same work in the same place even if there were to be a change in supervisors, i.e. that the employees are tied to an entity rather than an ostensible direct employer; and (4 )the degree each Defendant supervises the employees' works, i.e. the effective control of the terms and conditions of the employee's employment.  *See Zheng*, 355 F.3d 61, at 72.  *See also Fernandez,* 407 F. Supp. 3d 445,

451 ("*Zheng* makes clear that not every factor needs to weigh against joint employment in order for a defendant to be entitled to summary judgment." (citing *Zheng*, 355 F.3d at 77)).  Specifically, as discussed above, and in FAC ¶ 19, Plaintiff was supervised by Dr. Sophie Molholm, whom he understood to work for the College and Montefiore, throughout his entire employment.  Plaintiff's understanding is reasonable, as Dr. Molholm publicly represents herself as working for the College and Montefiore.  This draws a reasonable inference that Plaintiff's work was under the effective control of both the College and Montefiore, and that Plaintiff and his supervisor's work duties are directly related to and for the benefit of both the College and Montefiore.  If any factual dispute still remains, it should be resolved after discovery, as Plaintiff's work products and terms and conditions of his employment, which are necessary to further prove the Montefiore Defendants' functional control, are in the possession of Defendants.  *See Almonte v. JAM Maint. LLC,* 2023 U.S. Dist. LEXIS 165124, at *11-12 (S.D.N.Y. Sep. 18, 2023) (denying motion to dismiss and for summary judgment because genuine disputes over facts material to the joint employer analysis cannot be resolved on the pleadings, as the parties have yet to commence discovery; and pointing out that "[t]he final determination 'whether an entity is a joint employer' is a '[conclusion of law to be drawn from applying the factors.'").

### ii.    Plaintiff Sufficiently Plead That Defendants Are A Single Integrated Enterprise.

Plaintiff pleads that the Montefiore Defendants are a single integrated enterprise with the College, as an alternative or cumulative theory to establish that the Montefiore Defendants are employers under the FLSA and NYLL.  FAC ¶¶ 15-20.  Under the single integrated enterprise doctrine, or single employer doctrine, multiple entities are liable to an employee who is technically employed on the books of one entity, which is actually part of a larger single-employer entity or entities.  *See Griffin*, 835 F.3d 283, 292 ( "The single employer doctrine provides that, in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed

to be part of a larger single-employer entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer.")

The Second Circuit has explained that "the policy underlying the single employer doctrine [is[ . . . most implicated where one entity actually had control over the labor relations of the other entit[ies], and, thus, bears direct responsibility for the alleged wrong." *Murray v. Miner*, 74 F.3d 402, 405 (2d Cir. 1996). Courts have explained that the critical question is which entity makes final decisions regarding employment matters. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995). The single integrate enterprise doctrine serves as one of the tests that can be used to overcome any presumption that a corporate parent or sibling corporations, such as any of the Montefiore Defendants, are not the employer of its subsidiary.[4] *See Brown*, 756 F.3d 219, 228 n.9 (a single employer situation may present in cases involving both sibling corporations and/or a parent and subsidiary).

Again, the Second Circuit has recognized that the issue of whether the Defendants should be treated as a single employer "is generally a question of fact not suitable to resolution on a motion to dismiss." *Brown*, 756 F.3d at 226. At this stage, to successfully plead that Defendants are a single integrated enterprise, Plaintiff need only plausibly plead one or more of the following: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common

---

[4] Defendants' suggestion that they cannot be single integrated employers, given the presumption protecting the liability of corporate parents or sibling corporations, *see* Defs. Mem. at 11, fails to appreciate that satisfying the single integrated enterprise doctrine overcomes this presumption. Indeed, the entire purpose of the "single entity" doctrine in employment cases is to hold related entities jointly and severally liable for legal violations notwithstanding their separate corporate structure. *See*, e.g., *Hernandez v. Quality Blacktop Servs.*, 2021 U.S. Dist. LEXIS 46104, at *15 (E.D.N.Y. Mar. 10, 2021) ("There are two principal theories under which multiple entities may be held jointly and severally liable for unpaid wages: 'single integrated enterprise' and 'joint employer.'").

ownership or financial control. *See Cook*, 69 F.3d 1235, 1240; *Murray*, 74 F.3d 402, 404 ("Although no one factor is determinative . . . control of labor relations is the central concern."). Plaintiff sufficiently plead those factors, and so the Court must deny Defendants' hold that Plaintiff failed to successfully plead that Defendants are a single integrated enterprise.

Furthermore, Defendants are wrong to suggest, without any basis, that this doctrine may not apply to claims arising under the NYLL, as courts have only found sufficient support for its application to the breadth of the FLSA's definition of an employer. *See* Defs. Mem. at 10 (citing *Dacas v. Duhaney*, No. 17-3568, 2023 U.S. Dist. LEXIS 160674, at *29 (E.D.N.Y., Sept. 8, 2023)). Courts have been clear that the FLSA's and NYLL's definitions of employer shall be interpreted similarly. *See Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014) ("Courts in this District have regularly applied the same tests to determine, under the FLSA and NYLL, whether entities were joint employers.").

     **a.**       **Plaintiff Sufficiently Plead That**
                  **<u>Defendants Had A Centralized Control Of Labor Relations.</u>**

Plaintiff sufficiently plead that Defendants had a centralized control of labor relations, and thus has satisfied that Defendants are a single integrated employer under the FLSA and NYLL. *See Murray,* 74 F.3d 402, 404 ("Although no one factor is determinative . . . control of labor relations is the central concern.") (citations omitted). This burden is an easy one for Plaintiffs at this stage. *See Brown*, 756 F.3d 219, 227 ("To satisfy the single-employer test, a plaintiff need not allege that the parent exercises 'total control or ultimate authority over hiring decisions,' so long as he alleges that there is 'an amount of participation [by the parent] that is sufficient and necessary to the total employment process.") (citing *Cook*, 69 F.3d at 1241).

Courts have held that the following constitutes evidence of centralized control of labor relations: "handling job applications, approval personnel status reports, [or] exercising veto power over major employment decisions." *See Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 31 (2d Cir. 2015)

(quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000)).   However, since such evidence is often unavailable until discovery, courts do not require much specificity in the pleadings to survive a motion to dismiss.  *See Popat v. Levy,* 253 F. Supp. 3d 527, 538 (W.D.N.Y. May 19, 2017) ("To survive a motion to dismiss, therefore, a plaintiff need only allege facts 'sufficient to put [the defendant] on notice of the theory of employer liability upon which [the] claims are based.'") (collecting cases).

Plaintiff pleads that there is centralized control of labor relations, by alleging that the Montefiore Defendants announced in a press release in 2015 that it would be assuming the operational authority and responsibility for the College.  FAC ¶ 16, 16 n.1.  *See also Brown*, 756 F.3d 219, 228 ("[A]t this early stage in the litigation, the control that [the plaintiff] alleged [the parent company] to have exercised over [the direct employer]'s employment actions . . . is adequate to sustain the action against [the direct employer]".).  This is sufficient; Plaintiff need not allege more specific pleadings at this stage.  *See Popat,* 253 F. Supp. 3d 527, 538.

Defendants' case citations are inapposite.  *See* Def. Mem. at 12 (citing *Solis v. ZEP LLC*, No. 19-4230, 2020 U.S. Dist. LEXIS 50797, 2020 WL 1439744, at *8 (S.D.N.Y. Mar. 24, 2020); *Musiello v. CBS Corp.*, 518 F. Supp. 3d 782, 790 (S.D.N.Y. 2011))[5].  In *Solis*, Plaintiff made allegations such as "[d]efendants are associated and joint employers", "jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers", which were thus determined as conclusory and insufficient under the single integrated enterprise theory.  *Solis*, 2020 U.S. Dist. LEXIS 50797, at *24.  Defendants also incorrectly claim that the plaintiff in *Musiello* "made far more specific allegations than those in the FAC".  Def. Mem. at 12 n.3.  Defendants simply

---

[5] In addition to being distinguishable, the opinion in *Musiello* was issued prior to the Second Circuit's instruction to District Courts that questions of statutory employment liability should generally not be addressed at the pleading stage.  *See Brown*, 756 F.3d at 226.

ignored Plaintiff's fact specific allegations in the FAC, including (1) the Montefiore Defendants announced in a press release in 2015 that it would be assuming the operational authority and responsibility for the College; and that the College joined the Montefiore Defendants in 2015. *See* FAC ¶ 16; and (2) the College and the Montefiore Defendants not only market themselves as a single-integrated entity under the marketing name "Montefiore Einstein", share a common logo, but also treated Plaintiff's employment as with both the College and the Montefiore Defendants, as reflected on Plaintiff's employment benefit documents, "during his 'First Year at Montefiore'". *See* FAC ¶ 17 and Exhibit 1. And crucially, unlike in *Musiello* where plaintiff made more general allegations regarding a parent corporation's control over a distinct subsidiary, this case concerns two economically integrated entities that have actively made the decision to act in concert and to share control over business and labor relations. At the pleading stage, Plaintiff has set out sufficient factual allegations in the FAC, far more than just conclusory allegations, thus Plaintiff sufficiently plead that Defendants had a centralized control of labor relations.

### b.      Plaintiff Sufficiently Plead
### <u>Facts Supporting The Remaining Single Enterprise Factors.</u>

The remaining three factors weigh in favor of the Court holding that Plaintiff sufficiently plead facts supporting the single enterprise factor. However, Plaintiff need not sufficiently plead these remaining factors, given that he sufficiently plead that there is centralized control of labor relations. *See Cuji v. Sistina Rest.*, 2021 U.S. Dist. LEXIS 144424, at *11(S.D.N.Y. Aug. 2, 2021) ("[T]he decisive factor as to whether a named defendant is responsible for FLSA violations as to a particular plaintiff turns on control.") (collecting cases).

**<u>First</u>**, the Second Circuit has held that, as this stage, pleadings alleging that there was a system that allowed employees to be assigned to work at or between the entities were sufficient to establish that there is a "significant degree of interrelated operations." *Brown.*, 756 F.3d 219, 227 n.8 (citation omitted). As such, Plaintiff sufficiently plead that there are interrelated operations between, at the

very least, the Montefiore Defendants and the College, by alleging that his supervisor was employed by both. FAC ¶ 19. Plaintiff further supports these allegations by pleading that the Montefiore Defendants and the College market themselves as a single integrated enterprise. FAC ¶ 17; *see also Nat'l Lab. Rels. Bd. v. Newark Elec. Corp.*, 14 F.4th 152, 165 (2d Cir. 2021) (finding single employer relationship where, inter alia, logos were both displayed on the job sites and employment documents); *Wexelberg v. Project Brokers LLC*, 2014 U.S. Dist. LEXIS 84400, at *20 (finding interrelation of operations where the parent company and subsidiary's websites mentioned and linked to one another).

In opposition, Defendants argues that any evidence of the integrated marketing is a "mere red herring." Def. Mem. at 14. In support, Defendants cite *Musiello*, 518 F. Supp. 3d 782, 792-93, which is distinguishable. The *Musiello* Plaintiff alleged that she received a personal identification number to access her employment account with the parent company, and was given email addresses at both the parent and subsidiary's website. *Musiello*, 518 F. Supp. 3d 782, at 792. Here, Plaintiff alleges not only that employment paperwork contained information from both entities, but also that College and the Montefiore Defendants' integrated marketing.

**Second**, Plaintiff's allegations of the degrees of ownership between the Montefiore Defendants and the College are sufficient to establish that there is common ownership pursuant to the single integrated enterprise doctrine. FAC ¶¶ 10-13, 16; *see also Brown*, 756 F.3d 219, 227 n.8 (agreeing that there is no dispute of common ownership when there are allegations of ownership between the defendants) (citation omitted).

**Third**, at this stage, Plaintiff's allegations that the Montefiore Defendants share operational authority of the College is sufficient to establish that there is common management. FAC ¶¶ 16; *see also Aguilar v. Calexico Cinco LLC*, 2024 U.S. Dist. LEXIS 115935, at *23 (E.D.N.Y. Jun. 28, 2024) (finding Plaintiffs have met the pleading burden to keep all Defendants as parties where all defendants are alleged to have common ownership). This allegation is not a conclusory assertion as Defendants

argue. *See* Def. Mem. at 13. Courts routinely find that such allegations are sufficient and that a plaintiff need not establish the intricacies of the corporate structure at the pleading stage when often such information is unavailable under the discovery stage. *See Yap v. Mooncake Foods, Inc.,* 146 F. Supp. 3d 552, 559 (S.D.N.Y. 2015) (finding single integrated enterprise based on common ownership and supervision, shared website, and intermingled payroll, among other factors). Defendants' citation to *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 82 (S.D.N.Y. 2020), is distinguishable. *See* Def. Mem. at 13. In that case, the court found that it was insufficient for the plaintiff to simply plead that the defendants controlled the plaintiffs' employment, without any factual detail suggesting that these statements might be true. *See McHenry*, 510 F. Supp. 3d 51, 82. In contrast, Plaintiff has offered numerous citations to support its allegations that the Montefiore Defendants have operational authority and responsibility over the college. FAC ¶¶ 16 n.1-2, 17 n.3.

## II.    Defendants' Motions To Strike Are Without Merit.

### A.   Pleadings Describing Defendants' Failure To Provide Meal And Rest Breaks Should Not Be Struck Because The Facts Are Relevant To Calculating The Unpaid Overtime Plaintiff And Coordinators Worked.

Defendants contend that Plaintiff's pleadings describing Defendant's failure to provide meal and rest breaks should be stricken because there is no private cause of action for such conduct under NYLL § 162, and because Plaintiff did not plead a count or cause of action for failure to provide rest and meal breaks. *See* Def. Mem. at 16, 16 n. 6. "Motions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 350 (W.D.N.Y. Sep. 29, 2006) (citing *Reiter's Beer Dist., Inc. v. Schmidt Brewing Co.,* 657 F. Supp. 136, 143 (E.D.N.Y. 1987)).

Defendants regularly denied Plaintiff and his fellow Coordinators rest and meal breaks. FAC. ¶¶ 42-43, 45. Plaintiff did not plead a separate cause of action for meal and/or rest break violations because the statute does not provide a private cause of action to enforce this violation. *See Romero v. DHL Express, Inc.*, 2015 U.S. Dist. LEXIS 36974, at *18 (S.D.N.Y. Mar. 24, 2015) ("Employer violations of New York Labor Laws are enforced by the New York Commissioner of Labor pursuant to the administrative procedure codified at Section 218, N.Y. Lab. Law § 218, and Courts have therefore found that 'there is no private right of action for a violation of § 162.'") (citing cases).

However, Plaintiff plead factual allegations relating to Defendants' meal and rest break violations because those violations count towards the calculation of unpaid overtime wages. *See Awan v. Durrani*, 2015 U.S. Dist. LEXIS 86171, at *30 (E.D.N.Y. Jul. 2015) ("[T]o the extent [the employee] is alleging that he worked through his statutory lunch breaks without pay, his claims may be cognizable under the overtime and minimum wage provisions of the NYLL . . ."). Specifically, Plaintiff and Coordinators often worked shifts that started before 11 a.m. in the morning and continued later than 7 p.m. in the evening. When they did, Defendants failed to always provide them with an additional twenty-minute meal break. *See* FAC. ¶ 45. The unpaid twenty-minute meal break should be counted towards additional unpaid overtime.

Defendants previously argued that Plaintiffs' original complaint should be struck because Plaintiff failed to provide enough detail about the hours Plaintiffs worked. *See* ECF No. 20 at 4. Plaintiff's allegations regarding the unpaid meal and rest break provide further detail about the hours worked and are relevant.

To prevail on a Rule 12(f) motion to strike, a party must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant. *See Hunley v. BuzzFeed, Inc.*, 2021 U.S. Dist. LEXIS 189420, at *13-14 (S.D.N.Y. Sep. 30, 2021). As

demonstrated above, Defendants' meal and rest break violations count towards the calculation of unpaid overtime wages, thus have a significant bearing on the unpaid overtime claim. None of the grounds to prevail on a motion to strike applies here. Therefore, Defendants' motion to strike should be denied.

**B. Courts Highly Disfavor Motions To Strike Class Claims At The Pleading Stage And Defendants' Fall Far Short Of Proving That The Court Should Prematurely Address Class Claims.**

Perhaps recognizing that Defendants' motion to dismiss the merits of Plaintiff's claims should fail, Defendants ask the Court to take the highly disfavored step of striking Plaintiff's class claims at the pleading stage.[6] *See, e.g.*, *Steele-Warrick v. Microgenics Corp.*, 677 F. Supp. 3d 107, 119 (E.D.N.Y. Jun. 12, 2023) ("Second Circuit courts disfavor striking class allegations before discovery is completed.") (citations and internal quotation omitted); *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010) ("A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.") (citation and internal quotations omitted). Defendants erroneously claim Plaintiff lacks standing as a class representative to include current employees within the scope of the class, simply because he is no longer employed by Defendants. That is not the law, and the U.S. Supreme Court has instructed District Courts to defer Article III standing issues until the class certification stage where, as here,

---

[6] "When evaluating a motion to strike allegations of a complaint, the court must accept as true all factual allegations in the complaint and view all reasonable inferences in the light most favorable to Plaintiffs, just as on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Andrews v. Home Depot U.S.A., Inc.*, No. 03-5200, 2005 U.S. Dist. LEXIS 44304, 2005 WL 1490474, at *2 (D.N.J. June 23, 2005). Such a motion will be granted only if: (i) there are no questions of fact; (ii) that there are no disputed questions of law; and (iii) under no set of circumstances the claims could succeed. *See In re MacGregor Elec., S.E.*, No. 08-0122, 2009 Bankr. LEXIS 2695, 2009 WL 2877293, at *5 (Bankr. D.P.R. Aug. 14, 2009).

certification issues are "'logically antecedent' to Article III concerns.'"  *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 831 (1999) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 612 (1997)). [7]

Indeed, here, what Defendants attempt to frame as an Article III standing issue is at most a question of whether the Plaintiff can ultimately demonstrate that he is an adequate class representative of the proposed class.  This is an issue that can and should be addressed based on a full record following discovery.  *Russell v. Forster & Garbus, LLP*, 2020 U.S. Dist. LEXIS 45299, at *9 (E.D.N.Y. Mar. 16, 2020) ("[I]t is widely agreed that adequacy is the most important factor to be considered when addressing requests for class certification.") (internal quotations omitted).  Indeed, several courts have held that motions to strike are premature when filed prior to a motion for class certification because a motion to strike is "for all practical purposes, identical to an opposition to a motion for class certification."  *Korman v. The Walking Co.*, 503 F. Supp. 2d 755, 762-63 (E.D. Pa. 2007); *see also Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 244 (E.D. Pa. 2012).  As the Ninth Circuit has explained, rather than entertaining a motion to strike class claims at the pleading stage, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable."  *Vinole v. Countrywide Home Loan, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (internal quotation omitted).

---

[7] The two out-of-district opinions that Defendants cite are inapposite, poorly reasoned, and contrary to the great weight of authority.  *See* Def. Mem. at 17-18 (citing *Maddison v. Comfort Sys. USA (Syracuse), Inc.*, No. 17-0359, 2018 U.S. Dist. LEXIS 16090, 2018 WL 679477, at *8 (N.D.N.Y. Feb. 1, 2018); *Roach v. T.L. Cannon Corp.*, No. 10-0591, 2015 U.S. Dist. LEXIS 177286, 2015 WL 10818750, at *6 (N.D.N.Y. 2015)).  As courts in the Second Circuit have held, the weight of authority in the Second Circuit is that questions of whether a proposed class representative's injuries are sufficiently similar to the class they seek to represent is "logically antecedent" with issues the Court will consider at the class certification stage based on a full record.  *See, e.g., In re DDAVP Indirect Purchaser Antitrust Litig.,* 903 F. Supp. 2d 198, 213 (S.D.N.Y. 2012) (explaining that there is "a growing consensus among district courts that class certification is logically antecedent, where its outcome will affect the Article III standing determination, and the weight of authority holds that in general class certification should come first") (collecting cases) (internal quotation marks and citation omitted)).

Plaintiff can and should be permitted to represent a class of current and former employees of Defendants subject to the same misclassification scheme.  Indeed, such classes are routinely certified in wage and hour class and collective actions.  *See e.g., Severino v. Avondale Care Group, LLC*, 1:21cv10720, ECF No. 296 (S.D.N.Y. Sep. 20, 2023) (in a wage and hour matter, certifying Rule 23 class of employees who worked for the defendants from December 15, 2015 through the date of the preliminary approval order, while named plaintiffs' worked from 2017 to 2022); *Gucciardo v. Titanium Constr. Servs.*, 2017 U.S. Dist. LEXIS 109727, at *13-14 (S.D.N.Y. Jul. 14, 2017) (granting certifying a class from 2010 through 2017, while the named plaintiff was employed from 2012 through 2015, and specifically pointing out that "[a]ssuming Defendants could raise the exemption defense [for part of the class period], Named Plaintiff nevertheless could represent the class because he was non-exempt for at least three years, and thus, 'the unique defense relating to his exemption cannot be characterized as central to the litigation, but may only limit his recoverable damages.'") (citing *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 344 (S.D.N.Y. 2004)).  *See also Spencer v. No Parking Today, Inc.,* 2013 U.S. Dist. LEXIS 36357, at *76 (S.D.N.Y. Mar. 15, 2013) ("[T]he rule barring certification of plaintiffs subject to unique defenses is not rigidly applied in this Circuit; it has generally been applied only where a full defense is available against an individual plaintiff's action.").[8]  Here, Defendants failed to raise a full unique defense as to Plaintiff's claims, but merely challenged the proposed class period Plaintiff seeks to represent, which is contrary to the overwhelming weight of authority.

---

[8] As a practical matter, granting Defendants' motion to strike would only serve to increase the Court's docket.  If the Court were to hold that, contrary to the weight of authority, a class representative must have worked for every day in the class period, the most likely result would be that additional Coordinators, who worked for different time periods than Plaintiff, would simply file additional lawsuits until the entire class period is covered.  This would result in Defendants and the Court being burdened by multiple lawsuits regarding the same unlawful conduct.

Ultimately, Plaintiff intends to show, with the benefit of discovery, that he worked under the same or sufficiently similar terms of employment as current and former Coordinators and similar positions working for Defendants. He was unquestionably injured by the failure to receive overtime due to this misclassification scheme and he has alleged that current and former employees within the putative class have been injured in the same way.[9] *See* FAC. ¶¶ 25-49. Discovery will show that Defendants have not meaningfully altered the underlying classification practice since Plaintiff's departure and he is perfectly adequate (indeed, likely better suited than current employees fearful of retaliation) to challenge Defendants' common misclassification practice as unlawful. It is disingenuous, especially at the pleading stage, for Defendants to argue that there are meaningful differences with respect to a classification practice it has made across the board in this case. *See Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007) ("The Court finds it disingenuous for Caribou, on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming the plaintiffs cannot proceed collectively to challenge the exemption.").

Equally or more importantly, in the class action context, there is broad agreement that a motion to strike class allegations is disfavored, and that the issue of class certification is more appropriately determined on a formal motion seeking class certification after the parties have

---

[9] Defendants cite *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 113, 122 (S.D.N.Y. 2012), where a former employee sought to obtain injunctive relief covering current employees in addition to monetary damages. Although the court found, in an outlier opinion, that the former employee could not seek injunctive relief, the court expressly found that its opinion did not concern a former employee's right to represent a class seeking monetary relief as in this wage and hour case. *Id.* at 122 ("we need not (and do not) decide whether Plaintiffs claims for monetary relief are incidental to the injunctive or declaratory relief."). Moreover, courts in this District have disagreed with *Chen-Oster. See, e.g., Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 467 (S.D.N.Y. 2013) ("The Court respectfully disagrees with Judge Sand" in *Chen-Oster* and found that there is no rule as a matter of law that former employees lack standing to seek injunctive relief and denying a motion to strike where such "arguments of that [regarding standing] can and should be deferred until class certification.").

conducted discovery, when a more complete factual record can be presented for the court's consideration. *See In re Bookends & Beginnings LLC*, 2022 U.S. Dist. LEXIS 161695, at *3-4 (S.D.N.Y. Sep. 7, 2022) ("In this circuit, motions to strike are looked on with disfavor, and motions to strike class allegations are even more disfavored because they require[ ] a reviewing court to preemptively terminate the  class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.") (internal quotation marks and citation omitted); *Chen-Oster v. Goldman, Sachs & Co.,* 877 F. Supp. 2d 113, 117 (S.D.N.Y. Jul. 16, 2012) (noting that pre-discovery motions to strike "are deemed procedurally premature".); *Ramos v. Apple Inc.,* 2023 U.S. Dist. LEXIS 158183, at *9-10 (S.D.N.Y. Sep. 6, 2023) (denying pre-discovery motion to strike class allegations and concluding that "class discovery will serve to refine the class and the allegations and to aid the [C]ourt in determining whether class certification is appropriate.") (internal quotation marks and citation omitted); *Kronenberg v. Allstate Ins. Co.*, 2020 U.S. Dist. LEXIS 44103, at *16 (E.D.N.Y. Mar. 12, 2020) (denying pre-discovery motion to strike class allegations, concluding that the defendants "cannot 'demonstrate from the face of the [c]omplaint that it would be impossible to certify the alleged class regardless of the facts Plaintiffs may be able to obtain during discovery.'") (citing *Mayfield v. Asta Funding, Inc.,* 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015)).

Ultimately, the Court will eventually engage in a rigorous analysis, after receiving comprehensive briefing from the parties applying Rule 23, to determine whether the class should be certified.  But this is not an analysis to be done absent "[d]iscovery and full briefing on the merits of class certification." *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 245 (E.D. Pa. 2012).  Defendants' argument that Plaintiff will not be able to adequately present their class claims due to the premature claim (which intends to disprove in discovery) that there are meaningful differences between the employment classification of Coordinators and similar positions who are still

employed by Defendants is self-serving and prematurely asserted.  The scope of the class to be certified is an issue the Court should consider at the class certification stage, after discovery and on a fuller record.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss Or, In the Alternative, Motion to Strike.


Dated: September 3, 2024
      White Plains, New York         **FINKELSTEIN, BLANKINSHIP,**
                                       **FREI-PEARSON & GARBER, LLP**

By:    */s/ Jeremiah Frei-Pearson*
           Jeremiah Frei-Pearson
           Andrew C. White
           Erin Raye Kelley
           One North Broadway, Suite 900
           White Plains, New York 10601
           Telephone: (914) 298-3281
           jfrei-pearson@fbfglaw.com
           awhite@fbfglaw.com
           ekelley@fbfglaw.com

           Shane Seppinni
           Zachary L. Rubin
           **SEPPINNI LAW**
           40 Broad St., 7th Fl.
           New York, NY 10004
           Telephone: (212) 859-5085
           shane@seppinnilaw.com
           zach@seppinnilaw.com

           *Attorneys for Plaintiff and the Proposed Class &*
           *Collective*