UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RINALDYS CASTILLO, *individually and on behalf of all others similarly situated,*

Plaintiffs,

-v-

ALBERT EINSTEIN COLLEGE OF MEDICINE INC., *et al.*,

Defendants.

24 Civ. 984

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Rinaldys Castillo brings this putative class and collective action against Montefiore Health Systems, Inc., Montefiore Medical Center, and Montefiore Medicine Academic Health System, Inc. (collectively, the "Montefiore defendants") and the Albert Einstein College of Medicine. He seeks, *inter alia*, overtime compensation, unpaid wages, and wage statements under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), §§ 190, 650 *et seq.* The Montefiore defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to strike portions of the Amended Complaint ("AC") under Rule 12(f). For the reasons that follow, the Court denies both motions.

I.        **Background[1]**

Albert Einstein College of Medicine (the "College") is a medical school located in the Bronx, New York. AC ¶ 10. Montefiore Medical Center ("MMC") is the "premier academic

---

[1] The following facts, assumed true for purposes of resolving the motions, *see Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012), are drawn from the AC, Dkt. 22. The Court may also consider "documents attached to the complaint as exhibits, and documents incorporated by

medical center and teaching hospital" affiliated with the College. *Id.* ¶ 13. In 2015, MMC's parent corporation, Montefiore Health Systems, Inc. ("MHS"), "assumed operational authority and responsibility for the College." *Id.* ¶¶ 12, 16 (cleaned up). MHS "markets its partnership with the College on its website," and in a press release, stated that the College, in 2015, "join[ed] Montefiore Medicine." *Id.* ¶ 16. Montefiore Medicine Academic Health Systems, Inc. ("MMAH") is the "corporate parent and umbrella organization for the College and MHS." *Id.* ¶ 11. MMAH "does business under the marketing name 'Montefiore Medicine,'" *id.*, and not only "owns a substantial interest in each of the Defendant entities," but is alleged to "maintain[] ultimate control of all Defendants' business operations," *id.* ¶ 15. The AC states that the Montefiore defendants collectively "share interrelated operations, centralized control of labor relations, common management, and common ownership or financial control." *Id.* ¶ 15. Since 2015, the AC alleges, "Einstein and Montefiore have increasingly deepened their integration and partnership," and "collectively do business under the marketing name 'Montefiore Einstein.'" *Id.* ¶ 17.

Defendants employ more than 2,000 individuals, hundreds of whom are "research coordinators," including Castillo. *Id.* ¶¶ 1, 14. Castillo was employed as a research coordinator between August 31, 2020 and May 31, 2022. *Id.* ¶ 25. Coordinators are entry-level employees that play a "crucial role" in facilitating research projects, including "implement[ing] study protocols, provid[ing] technical support, and ensur[ing] the accurate entry of data into the necessary databases, which is essential for the proper functioning of the studies." *Id.* ¶ 2. Such

---

reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (citation omitted).

duties are "carried out according to strict parameters without exercising discretion nor independent judgment." *Id.* ¶ 26.

       The AC alleges that defendants collectively (1) "share authority regarding recruitment and hiring," as reflected in Castillo's onboarding documents, annexed to the AC, *see id.*, Ex.1; (2) exercise "control over the work assignments given to" Castillo; (3) exercise "control over disciplinary decisions," including "decisions that could lead to termination"; (4) "engage in common supervision and oversight of employees"; and (5) "maintain a host of common employment records" related to Castillo's work. *Id.* ¶ 18.  The AC further alleges that the entities "share a common logo," which was used "on employment documents provided to Plaintiff and other putative class members in this case." *Id.* ¶ 17.  During the on-boarding process, Castillo was provided a benefits sheet that informed him of dental rates during his "First Year at Montefiore," although the page was marked with an "Albert Einstein College of Medicine" insignia. *Id.* ¶ 17 (citing *id.*, Ex. 1).  The AC alleges that Castillo was directly supervised by Dr. Sophie Molholm, whom he "understood to work for the College and Montefiore." *Id.* ¶ 19.

       Castillo alleges that he (and members of the putative class and collective) "regularly" work in excess of 40 hours per week and, as "employees" under the FLSA and NYLL, are entitled to overtime pay. *Id.* ¶¶ 3, 28.  Castillo alleges that he worked approximately 42 hours during the weeks of October 12, 2020, January 25, 2021, February 8, 2021, and September 27, 2021, without receiving overtime pay as required under the FLSA and NYLL. *Id.* ¶ 26.  He also alleges that defendants failed to pay him and other putative class and collective members timely wages or provide wage statements as required under the NYLL. *Id.* ¶¶ 34, 42, 47.

On February 9, 2024, Castillo filed this action. Dkt. 1. On April 26, 2024, defendants moved for dismissal. Dkt. 19. On April 29, 2024, the Court ordered Castillo to either amend the complaint or oppose the motion. Dkt. 21. On May 17, 2024, Castillo filed the AC. Dkt. 22. On July 11, 2024, defendants renewed their motion to dismiss. Dkt. 29 ("D. Mem."). On September 3, 2024, Castillo opposed. Dkt. 33 ("Pl. Mem."). On September 10, 2024, defendants replied. Dkt. 34.

### III.    Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A complaint is not required to provide "detailed factual allegations," but it must assert "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S at 555. A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id.* at 558. The Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145.

Defendants move to dismiss on the ground that the Montefiore defendants[2] do not qualify as "employers" under the FLSA and NYLL. *See* D. Mem. at 1. Based on the pleadings, the

---

[2] Defendants do not dispute that the College qualifies as a statutory "employer." *See generally* D. Mem.; *see also* Pl. Mem. at 4 (defendants "[t]acitly conced[e] that Plaintiffs' claims against the College are proper"). This decision thus focuses on whether the Montefiore defendants qualify as joint employers alongside Einstein College.

Court cannot so hold, as the AC adequately pleads that the Montefiore defendants qualify as joint employers with Einstein College. *See, e.g.*, *Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 442 (S.D.N.Y. 2017) ("[A]lthough Plaintiffs could have included more detail in their amended complaint, they have put forward more than mere boilerplate allegations" of joint employer status (citation omitted)); *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 208 (S.D.N.Y. 2014) ("Although plaintiffs may ultimately fail to prove that the franchisor defendants were joint employers under the FLSA and NYLL, they have pled enough facts to survive a motion to dismiss, and are thus entitled to test their claims in discovery.").

### A.    Legal Standards for Joint Employer Liability

Only an "employer" can be liable for violations of the FLSA and the NYLL. *See Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 372 (S.D.N.Y. 2022); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). Under the FLSA, an "employer" is a "person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). That term, as the Supreme Court has emphasized, is defined with "striking breadth." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). An individual may have multiple "employers" for the purposes of the FLSA, and "all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA]." 29 C.F.R. § 791.2(a).

Under the NYLL, an "employer" is "any person . . . employing any individual in any occupation, industry, trade, business or service," or "any individual . . . acting as employer." NYLL §§ 190(3), 651(6); *see Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013). "Because the two statutory definitions are nearly identical, courts in this Circuit have interpreted 'employer' under the NYLL in the same way they interpret 'employer' in the FLSA." *Wang v.*

*Leo Chuliya, Ltd*, No. 20 Civ. 10395, 2024 WL 324789, at \*4 (S.D.N.Y. Jan. 29, 2024) (collecting cases). The Court follows the weight of authority among courts in this Circuit and applies the same analysis to both statutes, as neither party has supplied contrary authority. *See id.*

In assessing employer status under the FLSA, and by extension, the NYLL, "control is key." *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (citation omitted); *see Herman*, 172 F.3d at 135 ("[C]ontrol of employees is central to deciding whether [the defendant] should be deemed an employer."). The analysis is grounded in "economic reality rather than technical concepts." *Barfield v. N.Y.C. Health & Hospitals Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)); *see also Herman*, 172 F.3d at 139 ("[T]he remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy." (citation omitted)). With these precepts in mind, the Court considers the two tests under which joint employer status may be established: one relating to "formal" control, the other to "functional" control. *Barfield*, 537 F.3d at 142–43.

The formal-control test asks whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (citation omitted). These factors are "nonexclusive" and sufficiently "flexible to give proper effect to the broad language of the FLSA." *Barfield*, 537 F.3d at 143. As this Court has stated,

> Formal control does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the

employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence.

*Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 939 (S.D.N.Y. 2013) (citing *Herman*, 172 F.3d at 139).

The functional control test, by contrast, evaluates whether the alleged employer, even absent formal control, exercised "functional control" over the employee. The following non-exclusive factors bear on the inquiry:

> (1) Whether the alleged employers' premises and equipment were used for the plaintiffs' work; (2) whether the subcontractors had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to alleged employers' process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the alleged employers or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the alleged employers.

*Id.* at 939–40 (cleaned up); *accord Barfield*, 537 F.3d at 143.

**B.    Analysis**

As the Second Circuit has repeatedly stated, joint employment status is "a question of fact not suitable to resolution on a motion to dismiss." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014); *Barfield*, 537 F.3d at 143–44 (similar); *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 422 (S.D.N.Y. 2022) (joint employment status is "essentially a factual issue" that "is not suitable to resolution on a motion to dismiss" (citation omitted)). Such is true here. Castillo may or may not ultimately establish joint employer status as to each Montefiore defendant, but he has pled enough to move to discovery. *See Olvera*, 73 F. Supp. 3d at 208 (so too holding).

In the AC's telling, the Montefiore defendants collectively exercised control over the Castillo (and the members of the putative class and collective) as a matter of "economic reality."

AC ¶ 18 (cleaned up). Defendants argue that the AC merely makes "conclusory statements" and "formulaic allegations of the legal elements" of joint employment. D. Mem. at 1. That is wrong. The AC specifically describes the manner in which the Montefiore defendants exercised control over Castillo's and others' employment, including by "shar[ing] authority regarding recruitment and hiring," exercising "control over the work assignments given to [Castillo]," exercising "control over disciplinary decisions," "engag[ing] in common supervision and oversight of employees," and "maintain[ing] a host of common employment records" related to Castillo's work. *Id.* Defendants even, as alleged, do business as one entity—"Montefiore Einstein"—and "share a common logo, including using th[e] integrated logo on employment documents provided to Plaintiff and other putative class members in this case." *Id.* ¶ 17. The AC further alleges that Castillo's direct supervisor, Dr. Sophie Molholm, was employed by "the College *and* Montefiore." *Id.* ¶ 19 (emphasis added).

Discovery will shed light on the degrees of control exercised by each Montefiore defendant over the conditions of Castillo's and others' employment. It may emerge that the MHS, which held itself out as "assum[ing] operational authority and responsibility for the College," *id.* ¶ 16, qualifies as the sole joint employer alongside the College, and that MMAH, its corporate parent, does not exercise sufficient control over employees to so qualify. The pleadings, however, do not support that finding. *Accord Flores*, 256 F. Supp. 3d at 442 ("Certainly, Plaintiffs could have been more specific in their allegations, and the Court wishes that they had been. But although Plaintiffs could have included more detail in their amended complaint, they have put forward more than mere boilerplate allegations of the existence of [joint employer status]." (citation omitted)).

And the AC's allegations support that, as a matter of economic reality, the Montefiore

defendants are not "hermetically separate" from Einstein. *Rick's Cabaret*, 967 F. Supp. 2d at

941. Insofar as the defendants allegedly "share[d] interrelated operations, centralized control of

labor relations, common management, and common ownership or financial control," AC ¶ 15,

the AC plausibly alleges that the Montefiore defendants are joint employers with Einstein under

either the "formal" or "functional" control test. *See, e.g.*, *Olvera*, 73 F. Supp. 3d at 207 (joint

employer allegations sufficient under either test where employers allegedly exercised control

over hiring and firing decisions, work assignments, and recordkeeping); *Flores*, 256 F. Supp. 3d

at 442 (similar); *Murphy v. Heartshare Hum. Servs. of N.Y.*, 254 F. Supp. 3d 392, 402–04

(E.D.N.Y. 2017) (similar); *cf. Wang v. Leo Chuliya, Ltd*, No. 20 Civ. 10395, 2024 WL 324789,

at *5 (S.D.N.Y. Jan. 29, 2024) (no joint employer liability for entity that lacked hiring and firing

authority and did not supervise plaintiffs' work schedules or employment conditions).

The cases upon which defendants rely are inapposite. In *Musiello*, the "joint employer"

theory of liability failed because plaintiffs had abandoned it in their opposition to dismissal. *See*

*Musiello v. CBS Corp.*, 518 F. Supp. 3d 782, 789 n.6 (S.D.N.Y. 2021). And the *Musiello*

complaint did not satisfy "the most important factor" bearing on the claim: that the putative joint

employer "had control over the hiring, discipline, or supervision of [employees] in general, and

[plaintiff] in particular." *Id.* at 792; *see also Lawrence v. Int'l Bus. Mach. Corp.*, No. 12 Civ.

8433, 2017 WL 3278917, at *6 (S.D.N.Y. Aug. 1, 2017) (complaint "does not allege, for

instance, that IBM exercised immediate control over [putative joint employer's] employees, that

IBM controlled [putative joint employer's] labor relations, or that operations between IBM and

[the putative joint employer] were interrelated"); *Lopez v. Acme Am. Env't Co.*, No. 12 Civ. 511,

2012 WL 6062501, at *5 (S.D.N.Y. Dec. 6, 2012) ("[N]one of the Corporate Moving Defendants

had the power to hire the Plaintiffs. . . . Plaintiffs do not allege that any of the Corporate Moving

Defendants supervised or controlled their work schedules or payments, and they do not allege

that the Corporate Moving Defendants maintained [plaintiffs'] records[.]"). Here, however, as

reviewed above, the AC specifically alleges how the Montefiore defendants collectively exercise

control over the conditions of employment.

In sum, Castillo's joint-employer theory "require[s] discovery to resolve." *Lawrence*,

2017 WL 3278917, at *6; *Bautista*, 642 F. Supp. 3d at 422 ("[D]etermining joint employment

status is 'essentially a factual issue,' that, like determining single employer status, 'is not suitable

to resolution on a motion to dismiss.'" (quoting *Boire v. Greyhound Corp.*, 376 U.S. 473, 481

(1964))). Taking the facts pled as true, Castillo has stated a claim against the Montefiore

defendants.[3] *See Flores*, 256 F. Supp. 3d at 442.

### III.    Motion to Strike Under Rule 12(f)

Under Rule 12(f), a court may "strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to

strike are viewed with disfavor and infrequently granted." *Emilio v. Sprint Spectrum L.P.*, 68 F.

Supp. 3d 509, 514 (S.D.N.Y. 2014) (cleaned up). "Whether to grant or deny a motion to strike is

vested in the trial court's sound discretion." *Outlaw v. City of New York*, No. 22 Civ. 9288, 2024

---

[3] In light of this holding, the Court need not address the AC's alternative "single integrated
enterprise" theory of liability. AC ¶ 15. That doctrine applies only in "extraordinary
circumstances" where a plaintiff demonstrates "sufficient indicia of an interrelationship between
the immediate corporate employer and the affiliated corporation to justify the belief on the part
of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the
immediate employer." *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 134
(S.D.N.Y. 2020) (citation omitted). Although that theory of liability has increasingly been
applied by courts within this District in FLSA cases, *see Flores*, 256 F. Supp. 3d at 440
(collecting cases), the Second Circuit has not decided whether it extends beyond the Title VII
context, *see id.*; *see also Rick's Cabaret*, 967 F. Supp. 2d at 940 n.16 (similarly declining to
reach this issue).

WL 4825955, at *3 (S.D.N.Y. Nov. 19, 2024) (citation omitted).  "[I]f there is any doubt as to

whether under any contingency the matter may raise an issue, the motion should be denied."

*Carmona v. Spanish Broad. Sys., Inc.*, No. 8 Civ. 4475, 2009 WL 890054, at *10 (S.D.N.Y. Mar.

30, 2009) (citation omitted).

Defendants move to strike from the AC (1) all allegations pertaining to defendants'

failure to provide meal and rest breaks, and (2) all class allegations.  The Court denies that

motion.

### A.    Meal and Rest Break Allegations

Defendants move to strike all allegations involving meal and rest breaks on the ground

that, as a matter of law, there is no private right of action to enforce NYLL § 162 for alleged

violations of unpaid meal breaks.  *See* D. Mem. at 16.  The AC, however, does not bring suit

under § 162.  Instead, as Castillo explains, the AC's meal and rest break allegations are relevant

as bearing on its claim that defendants failed to pay overtime wages.  *See* Pl. Mem. at 16 (the AC

"plead[s] factual allegations relating to Defendants' meal and rest break violations because those

violations count toward the calculation of unpaid overtime wages.").  These allegations are thus

not "redundant, immaterial, impertinent, or scandalous[.]"  Fed. R. Civ. P. 12(f).  The Court

declines to strike them.  *Accord Awan v. Durrani*, No. 14 Civ. 4562, 2015 WL 4000139, at *9

n.12 (E.D.N.Y. July 1, 2015) ("[T]o the extent [plaintiff] is alleging that he worked through his

statutory lunch breaks without pay, his claims may be cognizable under the overtime and

minimum wage provisions of the NYLL discussed hereinabove.").

### B.    Class Allegations

Defendants, finally, move to strike all class allegations.  "A motion to strike class

allegations under Rule 12(f) is disfavored because it requires a reviewing court to preemptively

terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Blagman v. Apple Inc.*, No. 12 Civ 5453, 2013 WL 2181709, at *2 (S.D.N.Y. May 20, 2013) (cleaned up). However, a court may strike class allegations where the "class allegations fail as a matter of law . . . in essence, that no discoverable facts exist" that would allow the certification of the alleged class. *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012); *see also PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 Civ. 6413, 1999 WL 179358, at *1 (S.D.N.Y. Mar. 31, 1999) (striking class allegations where complaint contained "no facts from which it [could] be determined that there is any basis other than speculation as to whether there are other members of the class").

Here, defendants argue that Castillo cannot adequately represent employees whose claims pre- or post-date Castillo's employment. But whether Castillo can satisfy Rule 23's adequacy requirement is a class certification issue that should be addressed after discovery. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) ("Class certification issues are logically antecedent to Article III concerns." (cleaned up)); *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 290 (S.D.N.Y. 2024) (denying motion to strike class as premature); *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013) (same). And defendants' argument, if presented as a categorical proposition of law, is an overstatement. Class representatives in employment discrimination cases often represent similarly situated employees whose dates of employment do not precisely track those of the named plaintiff. *See, e.g., Gucciardo v. Titanium Constr. Servs., Inc.*, No. 16 Civ. 1113, 2017 WL 3738777, at *2 (S.D.N.Y. Aug. 30, 2017) (certifying class of individuals employed with defendant from 2010 to 2017, whereas the class representative was employed from 2012 through 2015); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363,

368 (S.D.N.Y. 2007) (former employee served as class representative of class of former and current employees). The class allegations here do not "fail as a matter of law." *Chen-Oster*, 877 F. Supp. 2d at 117. The Court denies the motion to strike.

**CONCLUSION**

For the foregoing reasons, the Court denies defendants' motions to dismiss and to strike in their entirety. The Clerk of Court is respectfully directed to terminate the motions pending at Dockets 19 and 28. By separate order, the Court will schedule an initial pretrial conference.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 3, 2025
New York, New York