**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**RINALDYS CASTILLO**, individually and on behalf of all others similarly situated,

Plaintiff,

v.

**ALBERT EINSTEIN COLLEGE OF MEDICINE INC., MONTEFIORE HEALTH SYSTEMS, INC., MONTEFIORE MEDICAL CENTER**, and **MONTEFIORE MEDICINE ACADEMIC HEALTH SYSTEM, INC.**,

Defendants.

Case No.: 1:24-cv-00984(PAE)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**OF THE MOTION FOR CONDITIONAL CERTIFICATION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................1

FACTS.....................................................................................................................................2

    I.    Plaintiff And The Collective Members Are All Employed By Defendants................................2

    II.    Failure To Pay Overtime.................................................................................................3

    III.    Plaintiff And The Collective Members Shared The Substantially Similar Job Duties...........3

    IV.    Procedural Posture. ........................................................................................................4

ARGUMENT............................................................................................................................5

    I.    Conditional Certification Is Appropriate.........................................................................5

        A.    Plaintiff Need Only Satisfy A "Very Light Burden" .................................................5
            To Obtain Conditional Certification Of A FLSA Collective. ..................................5

        B.    Plaintiff Has Made The Required Showing. ...........................................................9

    II.    EQUITABLE TOLLING.................................................................................................13

    III.    COURT AUTHORIZED NOTICE WITH A THREE YEAR NOTICE PERIOD IS APPROPRIATE. ...............................................................................................................14

    IV.    EXPEDIATED DISCLOSURE OF NAMES AND CONTACT INFORMATION.....15

CONCLUSION.........................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Coil Tubing Servs., L.L.C.,*
846 F. Supp. 2d 678 (S.D. Tex. 2012) ................................................................. 10,11

*Alonso v. Uncle Jack's Steakhouse, Inc.,*
648 F. Supp. 2d 484 (S.D.N.Y. 2009) ................................................................. 8

*Amendola v. Bristol-Myers Squibb Co.,*
558 F. Supp. 2d 459 (S.D.N.Y. 2008) ................................................................. 8

*Balderramo v. Taxi Tours Inc.,*
2017 U.S. Dist. LEXIS 89404 (S.D.N.Y. June 9, 2017) ............................................. 12

*Bhumithanarn v. 22 Noodle Mkt. Corp.,*
No. 14-2625, 2015 WL 4240985 (S.D.N.Y. July 13, 2015) ................................................. 8,13

*Bowens v. Atlantic Maint. Corp.,*
546 F. Supp. 2d 55 (E.D.N.Y. 2008) ................................................................. 8

*Cabrera v. Stephens,*
No. 16-3234, 2017 WL 4326511 (E.D.N.Y. Sept. 28, 2017) ..................................................... 13

*Chowdhury v. Duane Reade, Inc., No. 06- 2295,*
2007 WL 2873929 at *5 (S.D.N.Y. 2007) ........................................................ 8

*Cruz v. 70-30 Austin St. Bakery, Inc., No. 18-7408*
(PAE), 2019 U.S. Dist. LEXIS 73666 (S.D.N.Y. May 1, 2019) ................................................. 8

*Cruz v. Hook-SupeRx, L.L.C.,*
No. 09-7717, 2010 U.S. Dist. LEXIS 81021 (S.D.N.Y. Aug. 5, 2010) ...................................... 8

*Fonseca v. Dircksen & Talleyrand Inc.,*
No. 13-5124, 2014 WL 1487279 (S.D.N.Y. Apr. 11, 2014) ................................................. 8, 16

*Gaspar v. Personal Touch Moving, Inc.,*
No. 13-8187, 2014 U.S. Dist. LEXIS 129856 (S.D.N.Y. Sept. 15, 2014) ................................. 8

*Glatt v. Fox Searchlight Pictures Inc.,*
No. 11-6784, 2013 U.S. Dist. LEXIS 121964 (S.D.N.Y. Aug. 26, 2013) ............................... 13

*Hallissey v. Am. Online, Inc.,*
No. 99-3785, 2008 WL 465112 (S.D.N.Y. 2008) ........................................................... 8

*Han v. Madison Ave. Realties, LLC,*
No. 22-382, 2022 U.S. Dist. LEXIS 120849 (S.D.N.Y. Jul. 8, 2022) ....................................... 8

*Hoffman-La Roche Inc. v. Sperling,*
    493 U.S. 165 (1989) ................................................................................................ 8,13

*In re Deloitte & Touche Overtime Litig.,*
    No. 10-2461, 2011 WL 6292923 (S.D.N.Y. Dec. 16, 2011) ...................................... 14

*In re Penthouse Exec. Club Comp. Litig.,*
    No. 10-1145, 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010) ...................................... 13

*Jackson v. Bloomberg, L.P.,*
    298 F.R.D. 152 (S.D.N.Y. 2014) .............................................................................. 13

*Ke v. JR Sushi 2 Inc.,*
    No. 19-7332, 2021 U.S. Dist. LEXIS 24554 (S.D.N.Y. Feb. 9, 2021) ...................... 8

*Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.,*
    No. 12-0265, 2012 U.S. Dist. LEXIS 76660 (S.D.N.Y. June 1, 2012) ........................ 6, 8, 14

*Kim Man Fan v. Ping's on Mott, Inc.,*
    No. 13-4939, 2014 WL 1512034 (S.D.N.Y. Apr. 14, 2014) ...................................... 14

*Knox v. John Varvatos Enterprises Inc.,*
    282 F. Supp. 3d 644 (S.D.N.Y. 2017) ...................................................................... 13

*Korenblum v. Citigroup, Inc.,*
    195 F. Supp. 3d (S.D.N.Y. 2016) ............................................................................. 8

*Lijun Geng v. Shu Han Ju Rest. II Corp., No. 18-cv-12220,*
    2019 U.S. Dist. LEXIS 154246 (S.D.N.Y. Sep. 6, 2019) .......................................... 8

*Little v. Carlo Lizza & Sons Paving, Inc.,*
    160 F. Supp. 3d 605 (S.D.N.Y. 2016) ...................................................................... 8

*Lynch v. United Servs. Auto. Ass'n,*
    491 F. Supp. 2d 357 (S.D.N.Y. 2007) ...................................................................... 8

*Martinenko v. 212 Steakhouse,*
    No. 22-0518, 2022 WL 1227140 (S.D.N.Y. Apr. 26, 2022) ...................................... 13

*Martinez v. JVA Indus.,*
    No. 20-7977, 2021 U.S. Dist. LEXIS 66761 (S.D.N.Y. Apr. 6, 2021) ...................... 8

*McGlone v. Contract Callers, Inc.,*
    867 F. Supp. 2d 438 (S.D.N.Y. 2012) ...................................................................... 12,13

*Millin v. Brooklyn Born Chocolate, LLC,*
    No. 19-3346, 2020 WL 2198125 (E.D.N.Y. May 6, 2020) ...................................... 13

*Morris v. Lettire Const. Corp.*,
　896 F. Supp. 2d 265 (S.D.N.Y. 2012) ............................................................. 13

*Myers v. Hertz Corp.*,
　624 F.3d 527 (2d Cir. 2010) ................................................................... 7, 14

*Qing Tian Zhuo v. Jia Xing 39th Inc.*,
　No. 14-2848, 2015 WL 1514950 (S.D.N.Y. Apr. 1, 2015) ......................... 8

*Raniere v. Citigroup Inc.*,
　827 F. Supp. 2d 294 (S.D.N.Y. 2011) ...................................................... 13

*Sanchez v. Gansevoort Mgmt. Grp., Inc.*,
　No. 12-0075, 2013 WL 208909 (S.D.N.Y. Jan. 10, 2013) ......................... 8

*Schaefer v. M & T Bank Corp.*,
　122 F. Supp. 3d 189 (S.D.N.Y. 2015) ...................................................... 13

*Sethi v. Narod*,
　974 F. Supp. 2d 162 (E.D.N.Y. 2013) ...................................................... 9

*Trinidad v. Pret A Manger (USA) Ltd.*,
　962 F. Supp. 2d 545 (S.D.N.Y. 2013) ...................................................... 8

*Viriri v. White Plains Hosp. Med. Ctr.*,
　320 F.R.D. 344 (S.D.N.Y. 2017) ......................................................... 8,13

*Weng Long Liu v. Rong Shing, Inc.*,
　No. 12-7136, 2014 WL 1244676 (S.D.N.Y. Mar. 26, 2014) ..................... 13

*Young v. Cooper Cameron Corp.*,
　586 F.3d 201 (2d Cir. 2009) ................................................................... 9

*Zaldivar v. JMJ Caterers, Inc.*,
　No. 14-924, 2016 WL 792404 (E.D.N.Y. Feb. 26, 2016) ......................... 8

*Zerilli-Edelglass v. New York City Transit Auth.*,
　333 F.3d 74 (2d Cir. 2003) ................................................................... 12

**Statutes**

29 U.S.C. § 213 ................................................................................................ 9

29 U.S.C. § 216 ................................................................................ 5, 6, 8, 13

29 U.S.C. § 255 .............................................................................................. 13

29 U.S.C. §§ 201 ........................................................................................ 4, 8

**Other**

29 C.F.R. § 541.301 ................................................................................................................... 9

Fed. R. Civ. P. 23 ...................................................................................................................... 8

Plaintiff Rinaldys Castillo ("Plaintiff") respectfully moves to conditionally certify the proposed collective of similarly situated former or current employees (the "Collective Members") of Defendants Albert Einstein College of Medicine Inc. (the "College"), Montefiore Health Systems, Inc. ("MHS"), Montefiore Medical Center ("MMC"), and Montefiore Medicine Academic Health System, Inc. ("MMAH") (collectively, "Defendants"). Plaintiff and the Collective Members allege that Defendants failed to pay overtime to non-except employees, regardless of the number of hours they worked.[1]

## **PRELIMINARY STATEMENT**

Plaintiff and the similarly situated Collective Members employed by Defendants seek conditional certification of their collective claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* Discovery confirms that Defendants uniformly classified all such employees as exempt professionals, paid them on a salaried basis, and declined to compensate them for hours worked in excess of forty per week. The evidence further shows that all Collective Members performed substantially similar duties implementing research studies designed by principal investigators, and that none exercised the independent judgment or possessed the specialized advanced education necessary to qualify for any FLSA exemption.

Defendants' joint operations and unified employment policies underscore that this case is ideally suited for collective adjudication. Montefiore and Einstein function as an integrated enterprise, sharing leadership, facilities, and systems, and jointly employing coordinators who support research conducted under both institutions' auspices. The limited discovery Defendants have provided, along with deposition testimony from their corporate representatives, also confirms that all coordinators were subject to the same pay practices and job expectations.

---

[1] Plaintiff also assert claims on behalf of a class under the New York Labor Law, including failure to pay overtime, failure to provide required wage statements, and failure to pay wages at the required frequency. *See* ECF No. 22 (Amended Complaint Counts II-IV).

Because Plaintiff easily satisfies the "modest factual showing" required at this preliminary stage, conditional certification and court-authorized notice should issue so that other employees may preserve their rights while this litigation proceeds. Plaintiff further requests that the limitations period be tolled to August 15, 2022, as delays in filing this motion were due to Defendants' discovery practices and delays.

For these reasons, Plaintiff respectfully requests that the Court: 1) conditionally certify the proposed FLSA collective action under 29 U.S.C. § 216(b); (2) order Defendant to promptly identify all Collective Members that have been employed at any time during the relevant period; (3) direct the issuance of Plaintiff's proposed notice and consent form to all such persons; and (4) grant equitable tolling.

**FACTS**

Plaintiff and the Collective Members have all worked for Defendants, and each held the titles of Study Coordinator or Research Coordinator at some point between February 9, 2018, to the present.[2]

I.      **Plaintiff And The Collective Members Are All Employed By Defendants.**

The record establishes that Plaintiff and the proposed Collective Members were jointly employed by Defendants. Defendants' own witnesses conceded that coordinators are hired through Montefiore or Einstein but work interchangeably across both institutions, using the same systems, supervisors, and policies. *See e.g.*, Deposition of Shailesh Shenoy ("Shenoy Dep."), Ex. 1 to Declaration of Jeremiah Frei-Pearson ("Frei-Pearson Decl.") at 95:22-24 (Class members use Epic, which is licensed by Montefiore), 148:6-150:19 (Montefiore and Einstein utilize the same authentication system to access both Montefiore and Einstein Systems). The entities share a unified management structure in which

---

[2] Defendants maintain that employees were only employed by the College but have yet to produce any discovery proving this to be true. In contrast, the evidence within Plaintiff's possession suggests that Defendants jointly employed Plaintiff and the Collective Members. *See* Ex. 2 (announcement that Montefiore will assume "greater responsibility for the day-to-day operations and financial management" of the College).

Einstein's dean reports directly to Montefiore's CEO, and coordinators perform research activities within Montefiore facilities using Montefiore patient populations. Deposition of Yvonne Ramriez ("Ramirez Dep."), Ex. 3 to Frei-Pearson Decl., at 58:23-59:3 (Deponent answers that the Dean of Einstein College of Medicine reports to the CEO of Montefiore), 53:14-54:13 ("We [Einstein] study Montefiore patients.").Payroll, human resources, and scheduling are administered though shared infrastructure, and Defendants could not identify any distinction in the supervision, discipline, or compensation of coordinators based on which corporate entity issued their paychecks. *See* Ramriez Dep. 59:10-14 (payroll team is same for class), 87:3-7 (all class members had access to Kronos timekeeping software), 93:23-94:7 (all coordinators subject to same policy handbooks related to exemption from overtime), 147:3-8 (all coordinators equally subject to Defendants' understanding of the professional exemption).

## II.    Failure To Pay Overtime.

Defendants required Study and Research Coordinators to regularly work more than forty hours per week without overtime compensation. Declaration of Rinaldys Castillo ("Castillo Decl.") ¶¶ 5-12. Plaintiff's testimony, corroborated by Defendants' partial production of time records, establishes that coordinators worked in excess of forty hours per workweek. *Id.*; Exs. 12-14 to Frei-Pearson Decl. Despite this, Defendants uniformly paid coordinators fixed salaries with no premium for all hours worked. Ramirez Dep. 93:23-94:7 ("They do not report overtime. They do not get paid for overtime. That is made clear to them in their employment offer letters, again in our policy handbooks.").

## III.    Plaintiff And The Collective Members Shared The Substantially Similar Job Duties.

Discovery confirms that Study Coordinators and Research Coordinators performed the same core functions. Ramriez Dep. 147:14-152:15 (only difference between study and research coordinators is that research coordinators typically have more experience and additionally assist in grant applications. Otherwise, the roles have the same job responsibilities and educational requirements). Both titles

describe employees responsible for executing research protocols designed by principal investigators. Ramriez Dep. 148:14-149:5 and 150:24-151:6. Their primary duties involved duties necessary to execute those studies, including: included scheduling participant visits, conducting and recording testing sessions, collecting and entering study data, maintaining research materials, assisting with regulatory documentation, and communicating with investigators and families.

Defendants' Rule 30(b)(6) witness, Yvonne Ramirez, acknowledged that coordinators across departments followed standardized workflows and training modules and that the distinction between "Study Coordinator" and "Research Coordinator" reflected only departmental terminology, not substantive differences in job function or authority. Ramriez Dep. 147:14-152:15 (only difference between study and research coordinators is that research coordinators typically have more experience and additionally assist in grant applications. Otherwise, the roles have the same job responsibilities and educational requirements). Plaintiff's own affidavit and Defendants' job descriptions corroborate this testimony. *See* Castillo Decl. ¶ 9, Exs. 5-10 to Frei-Pearson Decl.

None of the Collective Members were required to hold advanced degrees in order to perform their jobs. Ramriez Dep. 151:14-25 (Bachelor's degree is the minimum educational requirement for both study and research coordinators).  No advanced degree was necessary because they merely implemented study protocols under the direction of principal investigators. Ramriez Dep. 148:14-149:5 and 150:24-151:6 (Principal investigators are responsible for the protocol).

## IV.    Procedural Posture.

Plaintiff filed his initial complaint on February 9, 2024. *See* ECF No. 1. Plaintiff then filed his amended complaint on May 17, 2024 (the "Amended Complaint"), after Defendants moved to dismiss the initial Complaint on April 26, 2024. *See* ECF Nos. 19, 22. The Court ordered Defendants to respond to the Amended Complaint by June 7, 2024; however, Defendants did not renew their motion to dismiss

until July 11, 2024, after requesting two extensions from the Court.[3] *See* ECF Nos. 21, 25, 27-28. Plaintiff made every reasonable effort to keep this case moving during that period.  Frei-Pearson Decl. at ¶ 2.

After the Court denied Defendants' motion to dismiss on May 4, 2025, *see* ECF No. 35, the Parties then agreed to file a motion for conditional certification on August 15, 2025, and then agreed to push the deadline to November 17, 2025, after Defendants failed to provide discovery in a timely manner. *See* ECF Nos. 48, 61, 63-64. For example, Defendants failed to produce, even a sample, of discovery showing the hours worked by Collective Members until September 15, 2025, which was needed to support this motion. *See* Ex. 4. Defendants also offered their 30(b)(6) deponents on October 6, 2025, and October 10, 2025. *See* Ex. 11. Neither deponent was able to provide meaningful testimony regarding the job descriptions of Collective Members, even at a general level. *See* Ex. 3. While Plaintiff is addressing this issue with Defendants, it does not affect Plaintiff's ability to move forward with this motion.

## ARGUMENT

### I.  Conditional Certification Is Appropriate.

#### A.  Plaintiff Need Only Satisfy A "Very Light Burden" To Obtain Conditional Certification Of A FLSA Collective.

Courts generally favor certifying FLSA collective actions because they promote judicial efficiency by enabling the "efficient resolution in one proceeding of common issues of law and fact" and allow employees to "lower individual costs to vindicate rights by the pooling of resources." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 489 (S.D.N.Y. 2009); *Ke v. JR Sushi 2 Inc.*, No. 19-7332, 2021 U.S. Dist. LEXIS 24554, at *3 (S.D.N.Y. Feb. 9, 2021) (Engelmayer, J.); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 562

---

[3] Defendants filed their second request for an extension eight days after the deadline to respond to the Amended Complaint had passed. *See* ECF No. 26 (ordering Defendants to file by July 2, 2025); 27 (Defendants' July 10, 2024 extension request).

(S.D.N.Y. 2013) (Engelmayer, J.); *Little v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 611 (S.D.N.Y. 2016) (Engelmayer, J.). Without collective actions, employees would need to bring multiple, nearly identical suits, burdening the courts and risking inconsistent outcomes. *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007) ("Collective adjudication will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources."). Collective actions are also favored because they lower the costs for employees to vindicate their rights. *See Hoffman-La Roche*, 493 U.S. at 170.

Unlike Fed. R. Civ. P. 23 class actions, affected current or former employees must affirmatively consent to join the collective. 29 U.S.C. § 216(b). District courts have discretion to facilitate collective actions by authorizing notice to potential plaintiffs, informing them of the pending lawsuit and their opportunity to opt-in. *See Gaspar v. Personal Touch Moving, Inc.*, No. 13-8187, 2014 U.S. Dist. LEXIS 129856, at *9-10 (S.D.N.Y. Sept. 15, 2014); *cf. Hoffman-La Roche*, 493 U.S. at 170-173 (courts have managerial and procedural authority to oversee an orderly and fair process of opting-in, pursuant to 29 U.S.C. § 216 and Fed. R. Civ. P. 83). Timely notice is crucial because the statute of limitations continues to run until a potential plaintiff files a written consent. *See Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12-0265, 2012 U.S. Dist. LEXIS 76660, at *3 (S.D.N.Y. June 1, 2012) (Engelmayer, J.) ("Supreme Court has recognized that the benefits of collective action accrue to plaintiffs only if they 'receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" (alteration in original) (quoting *Hoffman-La Roche*, 493 U.S. at 170)); *Cruz v. Hook-SupeRx, L.L.C.*, No. 09-7717, 2010 U.S. Dist. LEXIS 81021, at *7 (S.D.N.Y. Aug. 5, 2010). Unless otherwise tolled, the statute of limitations continues to run on employees' claims until they file their written consent form with the Court. 29 U.S.C. §§ 255, 256(b).

The Second Circuit recognizes a two-step process for FLSA collective certification. *See Ke v. JR Sushi 2 Inc.*, No. 19-7332, 2021 U.S. Dist. LEXIS 24554, at *3 (S.D.N.Y. Feb. 9, 2021) (Engelmayer, J.)

6

(citing *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010)) (conditionally certifying a collective action as to employees across two restaurants that were comprised of a single integrated enterprise). At the first stage, the court determines whether similarly situated potential plaintiffs exist who should receive notice and the opportunity to opt in. *See Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-cv-12220, 2019 U.S. Dist. LEXIS 154246, at *16 (S.D.N.Y. Sep. 6, 2019) (Engelmayer, J.) (citing *Myers*, 624 F.3d at 555; *Damassia v. Duane Reade, Inc.*, No. 04-8819, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). At the second stage, after discovery, the court assesses whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs and whether the collective may proceed. *See Ke*, 2021 U.S. Dist. LEXIS 24554, at *4 (citing *Myers*, 624 F.3d at 555).

At present, the parties are on the first stage. Here, Plaintiff need only make a "modest factual showing that [he] and other potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Ke*, 2021 U.S. Dist. LEXIS 24554, at *3-4 (citing *Myers*, 624 F.3d at 555; *Lynch*, 491 F. Supp. 2d at 368); *see also Martinez v. JVA Indus.*, No. 20-7977, 2021 U.S. Dist. LEXIS 66761, at *6 (S.D.N.Y. Apr. 6, 2021) (internal quotation marks omitted). Plaintiff's burden at this staged is "very low." *Ke*, 2021 U.S. Dist. LEXIS 24554, at *4 (quoting *Lynch*, 491 F. Supp. 2d at 368)). "Plaintiffs can meet this burden by showing that there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions."[4] *Martinez*, 2021 U.S. Dist. LEXIS 66761, at *7 (internal quotation marks and citations omitted); *see also Myers*, 624 F.3d at 555 (citing *Hoffmann*,

---

[4] When a plaintiff alleges that the defendants were joint employers, the plaintiff must provide evidence that the defendants could be considered joint employers of both the Plaintiff and the Collective Members, and that they were subject to a common policy implemented by all defendants. *See Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 487 (S.D.N.Y. 2016) (Engelmayer, J.) (denying conditional certification only because the plaintiff's sole affidavit failed to provide sufficient detail on observations or conversations, such as when or where the observations or conversations took place) (citing *Mata v. Foodbridge LLC*, 14-8754 (ER), 2015 U.S. Dist. LEXIS 70550, 2015 WL 3457293 at *5 (E.D.N.Y. June 1, 2015); *Hernandez v. Bare Burger Dio Inc.*, 12-7794, 2013 U.S. Dist. LEXIS 89254, 2013 WL 3199292 at *3 (S.D.N.Y. June 25, 2013)).

7

982 F. Supp. at 261) (to make a "modest factual showing" that a plaintiffs need only show that they were "victims of a common policy or plan that violated the law" as were putative collective members). Courts do not consider the merits of the claims at this stage. *See Lijun Geng*, 2019 U.S. Dist. LEXIS 154246, at \*19 (citing *Hamadou*, 915 F. Supp. 2d at 662; *Lynch*, 491 F. Supp. 2d at 368); *Lynch*, 491 F.Supp.2d at 368-69 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations . . . . "[A]ny factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification.""); *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13-5124, 2014 WL 1487279, at \*3 (S.D.N.Y. Apr. 11, 2014) (holding that defendants' declarations going to "merits based arguments are premature on a motion for conditional certification and must wait for summary judgment or trial"); *Hoffmann-La Roche Inc.*, 493 U.S. at 174, 110 ("[T]rial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."); *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 348 (S.D.N.Y. 2017) ("[A]t this stage, 'a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated' . . . . "Even if 'dates of employment and hours worked are unique to each employee,' that 'does not necessarily create dissimilarity under the FLSA.'" *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 348 (S.D.N.Y. 2017) (quoting *Amador v. Morgan Stanley & Co. LLC*, No. 11-4326, 2013 U.S. Dist. LEXIS 19103, at \*9 (S.D.N.Y. Feb. 7, 2013)); *Hallissey v. Am. Online, Inc.*, No. 99-3785, 2008 U.S. Dist. LEXIS 18387, at \*5 (S.D.N.Y. Feb. 19, 2008)).

To meet his burden, Plaintiff need only put forth "substantial allegations" of a factual nexus between Plaintiff and Collective Members regarding the alleged FLSA violation. *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008). Courts have found that a single affidavit from the plaintiff is sufficient to meet this burden. *See, e.g., Khamsiri*, 2012 WL 1981507 (conditional certification based on one plaintiff's affidavit) (Engelmayer, J.); *Zaldivar v. JMJ Caterers, Inc.*, No. 14-924,

2016 WL 792404, at *4 (E.D.N.Y. Feb. 26, 2016) ("[C]ourts have routinely found that the allegations in the pleadings and the 'personal observations of one plaintiff's affidavit' are 'sufficient to make the modest factual showing necessary to conditionally certify [a] class.'"); *Qing Tian Zhuo v. Jia Xing 39th Inc.*, No. 14-2848, 2015 WL 1514950, at *3 (S.D.N.Y. Apr. 1, 2015) (finding single plaintiff affidavit sufficient to conditionally certify a collective of four restaurants); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-2625, 2015 WL 4240985 (S.D.N.Y. July 13, 2015) (single affidavit); *Sanchez v. Gansevoort Mgmt. Grp.*, Inc., No. 12-0075, 2013 WL 208909 (S.D.N.Y. Jan. 10, 2013) (single affidavit); *Bowens v. Atlantic Maint. Corp.*, 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008) (no corroborating evidence besides plaintiff's affidavit). *Cf. Hallissey v. Am. Online, Inc.*, No. 99-3785, 2008 WL 465112, at *1 (S.D.N.Y. 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members."); *Cruz v. 70-30 Austin St. Bakery, Inc.*, No. 18-7408 (PAE), 2019 U.S. Dist. LEXIS 73666, at *8-9 (S.D.N.Y. May 1, 2019) (Engelmayer, J.). Thus, the proper inquiry is whether Plaintiff, and potential opt-in plaintiffs are similarly situated with respect to the allegations that the law has been violated, and not whether their job responsibilities are identical or whether they worked at the same location. *See Chowdhury v. Duane Reade, Inc.*, No. 06- 2295, 2007 WL 2873929 at *5 (S.D.N.Y. 2007); *Qing Tian Zhuo*, 2015 WL 1514950, at *3.

### B.      Plaintiff Has Made The Required Showing.

Plaintiff can make a substantial showing that: (1) he and all similarly situated study coordinators and research coordinators performed substantially similar job duties that did not qualify for any exemption under the FLSA; (2) he and all similarly situated employees were not paid overtime for hours worked over forty in a workweek; and (3) Defendants' failure to pay overtime resulted from a common policy or plan that violated the FLSA. *See Martinez*, 2021 U.S. Dist. LEXIS 66761, at *7; *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d at 487 (S.D.N.Y. 2016).

**First**, Plaintiff can attest and discovery supports that neither Plaintiff nor the Collective Members are exempt under the FLSA's learned profession exemption. *See* Ramirez Dep. 93:23-94:7. First, none would meet the requirement to have "advanced knowledge . . . customarily acquired by a prolonged course of specialized intellectual instruction." 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.301. At most, discovery shows that Collective Members were required to have a bachelor's degree in a field of science.[5] *See, e.g.*, Exs. 5-10. Courts have made clear that this is insufficient to qualify for this exemption. *See Young v. Cooper Cameron Corp.*, 586 F.3d 201, 206-07 (2d Cir. 2009) (find persuasive case law that states that bachelor's degrees are not advanced degrees). Furthermore, none required bachelor's degrees in a field applicable to the position. *See, e.g.*, Exs. 5-10. In fact, Plaintiff received a bachelor's degree in biology, which was not at all related to his work as a study coordinator. *See* Castillo Decl. ¶ 2. Courts have rejected arguments that these Collective Members would qualify under the FLSA exemption. *See Sethi v. Narod*, 974 F. Supp. 2d 162, 182 (E.D.N.Y. 2013) (finding that an employee did not qualify under the exemption when his degree was not relevant to his job).

Furthermore, the primary duties of the Collective Members did not require "advanced knowledge, defined as work which is predominantly intellectual in character and which includes work requiring the consistent exercise of discretion and judgment." 29 C.F.R. § 541.301(b); *see also* 29 U.S.C. § 213(a)(1). Rather, the primary duty of research coordinators and study coordinators was to carry out and facilitate studies designed and directed by the principal investigator. *See* Ramirez Dep. 147:14-152:15 (confirming that study coordinators and research coordinators perform the same core duties); Castillo Decl. ¶ 8 (same). Consistent with Plaintiff's testimony, Defendants have asserted only that these employees exercised discretion and judgment when offering minor feedback on the logistics or

---

[5] Some Collective Members were hired into positions that did not require any college or advanced degree in science. *See, e.g.*, Exs. 5-10. Certainly, those Collective Members do not qualify under the exemption. *See Zubair v. Entech Engineering, Inc.*, 808 F. Supp. 2d 592, 595, 598 (S.D.N.Y. 2011) (holding that plaintiff was not an exempt learned professional despite his bachelor's degree in engineering, because the position "does not require a college or an advanced degree").

10

implementation of a study, based on their experience executing, not designing, the research itself. *See* Ramirez Dep. 148:14-151:6. Courts have held that this type of work does not satisfy the requirement of "requiring consistent exercise of discretion and judgment."[6] *See Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678, 712 (S.D. Tex. 2012) (finding that data collection duties did not require discretion and judgment).

**Second**, Defendants have been clear that all full-time research coordinators and study coordinators were not paid overtime for any hours worked over 40 in a workweek. *See Ramirez* Dep. 93:23-94:7. Defendants argue, however, that no person worked over 40 hours per week. Not only does Plaintiff certify to the contrary, *see* Castillo Decl. ¶¶ 5-12, but initial discovery shows that other Collective Members were not paid for the work excess to forty hours each week.[7] *Compare* Exs. 12-14 (ECM0002778, ECM0003351, ECM0003461),[8] *with* Exs. 15-17 (showing that the Collective Members were paid for a full week's wages, consistent with their pay in other weeks); *see also* Ramirez Dep. 147:3-8 (explaining that all employees were viewed as exempt under the professional exemption).

**Third**, Defendants have admitted that all study coordinators and research coordinators are subject to Defendants' policy of not paying overtime. *See* Ramirez Dep. 93:23-94:7; Ex. 18 (handbook). While Defendants contest that they were joint employers, they have yet to produce any discovery or

---

[6] The Department of Labor has confirmed that this requirement is "less stringent" than the similar requirement for the administrative exemption. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, the Preamble to the 2004 Final Rule, 69 Fed. Reg. 22122, 22151 (April 23, 2004)).

[7] Defendants have only produced discovery on this issue from 29 of the 292 Collective Members. *See* Ex. 4.

[8] While typically Collective Members were told to not capture the number of hours worked each day in any official system, discovery shows a few instances where Collective Members ignored that instruction and captured overtime. *See* Exs. 12-14. Specifically, Exhibits 13 and 14 capture weeks in which Collective Members worked 43.75 hours in a single workweek. Exhibit 12 captures days in which a Collective Member worked 8.5 hours on certain days. *Cf.* Ex. 15 (showing that these days were not non-paid days, as the Collective Member was paid, in full, for those weeks); Ramirez Dep. 107:3-8 (confirming that it can be assumed that a Collective Member worked a full day on the days without time captured).

11

any witness showing this. Their corporate representatives were unable to explain even the basic relationship between the Montefiore and Einstein entities or how the collective members' work was divided between them. The record, instead, shows shared leadership, systems, and operations—facts that strongly indicate joint employment.

Defendants' witnesses could not describe when or how Einstein became affiliated with Montefiore, whether Montefiore assumed operational control, or what corporate entity governs both institutions. Ramirez Dep. 63:19-67:23. They were unaware of the entity known as "Montefiore Einstein," despite public filings and press releases confirming its creation in 2014 to unify the institutions. *Id.* When asked about management structure, Defendants' representative testified that Einstein's dean reports directly to Montefiore's CEO, and that employees work in Montefiore buildings and with Montefiore patients. *Id.* These admissions reflect a single integrated management structure and unified operations, not separate employers.

The limited testimony that Defendants did provide confirms that the two entities share critical infrastructure. Both use the same electronic medical record system (Epic), the same authentication and login systems, and overlapping administrative functions.[9] Shenoy Dep. 95:22-24, 148:6-150:19. Defendants' failure to identify any policies, payroll systems, or supervisory hierarchies that distinguish the entities further underscores that they function as one organization.

Defendants have also failed to produce any witness or documentation showing that either entity independently manages, disciplines, or compensates employees without the other's involvement. No witness could identify separate human resources policies, payroll records, or supervisory lines. Nor could Defendants identify any factual basis for asserting that one entity does not control or benefit from

---

[9] Plaintiff is currently working with Defendant to resolve this issue, but Plaintiff points out that Defendants mislead the Court in stating that there are no known systems that are under possession, custody, or control of the Montefiore Defendants. Defendants' representations are troubling, as Plaintiff had explicitly asked Defendants about Epic. Exs. 19-20.

the work performed by the collective members. In short, there is no evidence that the two institutions operate separately in any meaningful sense.

Defendants' continued refusal to provide discovery or testimony establishing their independence leaves only the undisputed facts: Montefiore and Einstein share leadership, systems, facilities, and employees. On this record, there is no competent evidence supporting Defendants' denial of joint employment, only substantial evidence that they jointly manage and control the work of collective members.

## II.    EQUITABLE TOLLING.

Upon granting this motion, the Court should also toll the FLSA statute of limitations for 394 days, or nearly 13 months, or for another time period the Court deems just, to account for the delays caused by Defendants. *See Balderramo v. Taxi Tours Inc.*, 2017 U.S. Dist. LEXIS 89404, at *11-19 (S.D.N.Y. June 9, 2017) (holding that limitations concerns cannot bar conditional certification where defendants' conduct created factual issues bearing on equitable tolling, similar to the discovery delays and procedural stalling). Tolling is appropriate to "avoid inequitable circumstances." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (quotation marks and citation omitted). It should be granted where (1) the plaintiff has acted with reasonable diligence during the period sought to be tolled, and (2) extraordinary circumstances exist that warrant application of the doctrine. *See Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003). Courts recognize that fairness requires preserving opt-in plaintiffs' rights when procedural delays have prevented them from receiving notice or participating in the case.

In this case, Defendants' delays in both motion practice and discovery warrant tolling the statute of limitations by 394 days. This includes the 331 days that elapsed after Defendants were ordered to respond to Plaintiff's amended complaint until Defendants filed their answer. It also includes the 63-day extension Plaintiff was forced to request to file this motion as a result of Defendants' discovery

13

delays. Plaintiff did not receive the discovery necessary to support this motion until mid-September, which in turn delayed their ability to seek a 30(b)(6) deposition. This is all impacted by the fact that Defendants did not engage in discovery until after the Court resolved its motion to dismiss, as well as Defendants' discovery delays. *See* discussion *supra* Facts Section III; *Viriri*, 320 F.R.D. at 355 (permitting equitable tolling where a "substantial gap between the time the Motion was fully submitted and the date of th[e] decision."); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170-71 (S.D.N.Y. 2014) (tolling the statute of limitations as of the date of the filing of the plaintiff's conditional certification motion); *Glatt v. Fox Searchlight Pictures Inc.*, No. 11-6784, 2013 U.S. Dist. LEXIS 121964, at *6 n.5 (S.D.N.Y. Aug. 26, 2013) (tolling statute of limitations as of the date the plaintiff was originally scheduled to file her motion for conditional certification, given the extension was due to discovery delays); *McGlone v. Cont. Callers, Inc.*, 867 F. Supp. 2d 438, at 445 (S.D.N.Y. 2012) (tolling statute of limitations while conditional certification motion was being decided). As such, the statute of limitations should be tolled by 394 days or another time period deemed just by the Court.

## III. COURT AUTHORIZED NOTICE WITH A THREE YEAR NOTICE PERIOD IS APPROPRIATE.

Plaintiff respectfully requests that, in addition to conditionally certifying this collective action, the Court authorize notice by mail, email, and text message to current and former employees dating back three years from the filing of the Amended Complaint. Courts routinely approve such notice in FLSA collective actions to ensure that potential claimants' rights do not expire while litigation proceeds. See *Schaefer v. M & T Bank Corp.*, 122 F. Supp. 3d 189, 193 (S.D.N.Y. 2015) ("[B]ecause the three-year statute of limitations begins to run as soon as a non-named plaintiff opts in, court-authorized notice is routinely approved").

Although the FLSA does not expressly require notice, the Second Circuit recognizes that courts have discretion to implement §216(b) by facilitating notice to potential plaintiffs of the action and their opportunity to opt in. *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010); *Hoffman-La Roche v. Sperling*,

14

493 U.S. 165, 169 (1989). Notice by email and text is now commonplace and routinely approved alongside mail. See *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 667 (S.D.N.Y. 2017); *Martinenko v. 212 Steakhouse*, No. 22-0518, 2022 WL 1227140, at *7 (S.D.N.Y. Apr. 26, 2022); *Cabrera v. Stephens*, No. 16-3234, 2017 WL 4326511 (E.D.N.Y. Sept. 28, 2017); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015); *Millin v. Brooklyn Born Chocolate, LLC*, No. 19-3346, 2020 WL 2198125, at *3 (E.D.N.Y. May 6, 2020).

Plaintiff's proposed notices are attached as Exhibits 21 (mail & email) and 22 (reminder), as well as the proposed opt-in form (Ex. 23). The notices are similar to those that this Court approved in *Ke*, No. 19-7332, ECF No. 113. These forms are designed to maximize awareness of the action and the right to opt in without imposing undue burden or creating a fishing expedition. *Morris v. Lettire Const. Corp.*, 896 F. Supp. 2d 265, 273 (S.D.N.Y. 2012).

Notice covering three years, plus tolling, is appropriate because the FLSA permits a three-year statute of limitations for willful violations. 29 U.S.C. § 255(a); *Weng Long Liu v. Rong Shing, Inc.*, No. 12-7136, 2014 WL 1244676, at *3 (S.D.N.Y. Mar. 26, 2014). Even if Defendants argue the violations were not willful, courts routinely apply a three-year notice period at the conditional certification stage, leaving any timeliness challenges for individual opt-in plaintiffs to be addressed later. See *Han v. Madison Ave. Realties, LLC*, 22-382, 2022 U.S. Dist. LEXIS 120849, at *15 (S.D.N.Y. Jul. 8, 2022); 2014 WL 1487279, at *4.

## IV.    EXPEDIATED DISCLOSURE OF NAMES AND CONTACT INFORMATION.

In order to provide potential opt-in plaintiffs with notice of the pendency of this lawsuit, Plaintiff requires discovery of the names and contact information for those individuals. "As has been noted by a number of courts in this circuit, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action." *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 327 (S.D.N.Y. 2011) (listing cases); *In re Penthouse Exec. Club Comp. Litig.*, No. 10-1145, 2010 WL 4340255,

at *5 (S.D.N.Y. Oct. 27, 2010) (listing cases). Indeed, "[i]t is now commonplace in this Circuit to require the provision of personal contact information to class counsel for the purposes of notifying a collective of a collective action and enabling class counsel to obtain relevant discovery." *In re Deloitte & Touche Overtime Litig.*, No. 10-2461, 2011 WL 6292923, at *1 (S.D.N.Y. Dec. 16, 2011).

Accordingly, Plaintiff respectfully requests that the Court direct Defendants to produce a computer-readable list of the full names, last known residence addresses, telephone numbers, last known email addresses, dates of employment, and location(s) worked for all persons employed by Defendants. *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12-265, 2012 U.S. Dist. LEXIS 76660, at *5 (S.D.N.Y. June 1, 2012) (Engelmayer, J.) (order the defendants to "produce to plaintiff a computer-readable list of the names, addresses, telephone numbers, and dates of employment" for all allegedly non-exempt employees); *Fonseca,* 2014 WL 1487279, at *5-6 (ordering discovery of all names, last known addresses, alternate addresses, telephone numbers, email addresses, dates and locations of employment, positions held, dates of birth and social security numbers); *Kim Man Fan v. Ping's on Mott, Inc.*, No. 13-4939, 2014 WL 1512034 (S.D.N.Y. Apr. 14, 2014) (requiring production of names, addresses, telephone numbers, and e- mail addresses).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) conditionally certify the proposed FLSA collective action; (2) order Defendants to promptly identify all potential collective members; (3) direct the issuance of Plaintiff's proposed notice and consent form to all such persons; and (4) grant equitable tolling.

Dated: August 15, 2025
      White Plains, New York

Respectfully submitted,

**FINKELSTEIN, FREI-PEARSON,
FREI-PEARSON & GARBER, LLP**

By:     <ins>*/s/ Jeremiah Frei-Pearson*</ins>
      Jeremiah Frei-Pearson
      Erin Raye Kelley
      One North Broadway, Suite 900
      White Plains, New York 10601
      Tel: (914) 298-3281
      Fax: (914) 824-1561
      jfrei-pearson@fbfglaw.com
      ekelley@fbfglaw.com

      Shane Seppinni
      Megan Jones
      **SEPPINNI LAW**
      40 Broad St., 7th Fl.
      New York, NY 10004
      Tel: (212) 859-5085
      shane@seppinnilaw.com
      megan@seppinnilaw.com

      *Attorneys for Plaintiff and the Putative Collective*

17